## WILSON *v.* SEITER ET AL.

No. 89–7376.   Argued January 7, 1991—Decided June 17, 1991

*Elizabeth Alexander* argued the cause for petitioner. With her on the briefs were *Alvin J. Bronstein, Gordon J. Beggs, John A. Powell,* and *Steven A. Shapiro.*

*Deputy Solicitor General Bryson* argued the cause for the United States as *amicus curiae* in support of petitioner. With him on the brief were *Solicitor General Starr, Assistant Attorney General Dunne, Deputy Solicitor General Shapiro, Deputy Assistant Attorney General Clegg, Michael R. Dreeben, David K. Flynn,* and *Thomas E. Chandler.*

*Rita S. Eppler,* Assistant Attorney General of Ohio, argued the cause for respondents. With her on the brief were *Anthony J. Celebrezze, Jr.,* Attorney General, *Nancy J. Miller,* and *Cherry Lynne Poteet* and *Nancy Johnston,* Assistant Attorneys General.*

---

*John Boston* filed a brief for the American Public Health Association as *amicus curiae* urging reversal.

A brief of *amici curiae* was filed for the State of Michigan et al. by *Frank J. Kelley,* Attorney General of Michigan, *Gay Secor Hardy,* Solicitor General, and *Thomas C. Nelson,* Assistant Attorney General, joined by the Attorneys General for their respective jurisdictions as follows: *Douglas B. Bailey* of Alaska, *Ron Fields* of Arkansas, *John K. Van de Kamp* of California, *Clarine Nardi Riddle* of Connecticut, *Charles M. Oberly III* of Delaware, *Warren Price III* of Hawaii, *James T. Jones* of Idaho, *Neil F. Hartigan* of Illinois, *Robert T. Stephen* of Kansas, *Frederic J. Cowan* of Kentucky, *William L. Webster* of Missouri, *Robert J. Del Tufo* of New Jersey, *Dave Frohnmayer* of Oregon, *Ernest D. Preate, Jr.,* of Pennsylvania, *T. Travis Medlock* of South Carolina, *Charles W. Burson* of Tennessee, *Mary Sue Terry* of Virginia, and *Hector Rivera-Cruz* of Puerto Rico.

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the questions whether a prisoner claiming that conditions of confinement constitute cruel and unusual punishment must show a culpable state of mind on the part of prison officials, and, if so, what state of mind is required.

Petitioner Pearly L. Wilson is a felon incarcerated at the Hocking Correctional Facility (HCF) in Nelsonville, Ohio. Alleging that a number of the conditions of his confinement constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, he brought this action under 42 U. S. C. § 1983 against respondents Richard P. Seiter, then Director of the Ohio Department of Rehabilitation and Correction, and Carl Humphreys, then warden of HCF. The complaint alleged overcrowding, excessive noise, insufficient locker storage space, inadequate heating and cooling, improper ventilation, unclean and inadequate restrooms, unsanitary dining facilities and food preparation, and housing with mentally and physically ill inmates. Petitioner sought declaratory and injunctive relief, as well as $900,000 in compensatory and punitive damages. App. 2–9, 53–54, 62–63.

The parties filed cross-motions for summary judgment with supporting affidavits. Petitioner's affidavits described the challenged conditions and charged that the authorities, after notification, had failed to take remedial action. Respondents' affidavits denied that some of the alleged conditions existed, and described efforts by prison officials to improve the others.

The District Court granted summary judgment for respondents. The Court of Appeals for the Sixth Circuit affirmed, 893 F. 2d 861 (1990), and we granted certiorari, 498 U. S. 808 (1990).

I

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amend-

ment, *Robinson* v. *California*, 370 U. S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.   In *Estelle* v. *Gamble*, 429 U. S. 97 (1976), we first acknowledged that the provision could be applied to some deprivations that were not specifically part of the sentence but were suffered during imprisonment.   We rejected, however, the inmate's claim in that case that prison doctors had inflicted cruel and unusual punishment by inadequately attending to his medical needs — because he had failed to establish that they possessed a sufficiently culpable state of mind.   Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, *id.*, at 104 (quoting *Gregg* v. *Georgia*, 428 U. S. 153, 173 (1976) (joint opinion) (emphasis added)), a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.   429 U. S., at 106.   "It is *only* such indifference" that can violate the Eighth Amendment, *ibid.* (emphasis added); allegations of "inadvertent failure to provide adequate medical care," *id.*, at 105, or of a "negligent . . . diagnos[is]," *id.*, at 106, simply fail to establish the requisite culpable state of mind.

*Estelle* relied in large measure on an earlier case, *Louisiana ex rel. Francis* v. *Resweber*, 329 U. S. 459 (1947), which involved not a prison deprivation but an effort to subject a prisoner to a second electrocution after the first attempt failed by reason of a malfunction in the electric chair.   There Justice Reed, writing for a plurality of the Court, emphasized that the Eighth Amendment prohibited "the *wanton* infliction of pain," *id.*, at 463 (emphasis added).   Because the first attempt had been thwarted by an "unforeseeable accident," the officials lacked the culpable state of mind necessary for the punishment to be regarded as "cruel," regardless of the actual suffering inflicted.   "The situation of the unfortunate victim of this accident is just as though he had suffered the identical amount of mental anguish and physical pain in any other occurrence, such as, for example, a fire in the cell

block." *Id.*, at 464. Justice Frankfurter, concurring solely on the basis of the Due Process Clause of the Fourteenth Amendment, emphasized that the first attempt had failed because of "an innocent misadventure," *id.*, at 470, and suggested that he might reach a different conclusion in "a hypothetical situation, which assumes a series of abortive attempts at electrocution or even a single, cruelly willful attempt," *id.*, at 471.

After *Estelle*, we next confronted an Eighth Amendment challenge to a prison deprivation in *Rhodes* v. *Chapman*, 452 U. S. 337 (1981). In that case, inmates at the Southern Ohio Correctional Facility contended that the lodging of two inmates in a single cell ("double celling") constituted cruel and unusual punishment. We rejected that contention, concluding that it amounts "[a]t most . . . to a theory that double celling inflicts pain," *id.*, at 348–349, but not that it constitutes the "unnecessary and wanton infliction of pain" that violates the Eighth Amendment, *id.*, at 346. The Constitution, we said, "does not mandate comfortable prisons," *id.*, at 349, and only those deprivations denying "the minimal civilized measure of life's necessities," *id.*, at 347, are sufficiently grave to form the basis of an Eighth Amendment violation.

Our holding in *Rhodes* turned on the objective component of an Eighth Amendment prison claim (Was the deprivation sufficiently serious?), and we did not consider the subjective component (Did the officials act with a sufficiently culpable state of mind?). That *Rhodes* had not eliminated the subjective component was made clear by our next relevant case, *Whitley* v. *Albers*, 475 U. S. 312 (1986). There an inmate shot by a guard during an attempt to quell a prison disturbance contended that he had been subjected to cruel and unusual punishment. We stated:

"After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not

purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is *obduracy and wantonness, not inadvertence or error in good faith,* that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.,* at 319 (emphasis added; citations omitted; internal quotation marks omitted).

These cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.[1] See also *Graham* v. *Connor,* 490 U. S. 386, 398 (1989). Petitioner concedes that this is so with respect to *some* claims of cruel and unusual prison condi-

---

[1] The concurrence would distinguish these cases on the ground that they did not involve "conditions of confinement" but rather "specific acts or omissions directed at individual prisoners." *Post,* at 309. It seems to us, however, that if an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement, whether or not the deprivation is inflicted upon everyone else. Undoubtedly deprivations inflicted upon all prisoners are, as a policy matter, of greater concern than deprivations inflicted upon particular prisoners, but we see no basis whatever for saying that the one is a "condition of confinement" and the other is not —much less that the one constitutes "punishment" and the other does not. The concurrence's imaginative interpretation of *Estelle* v. *Gamble,* 429 U. S. 97 (1976), has not been imagined by the Courts of Appeals —or as far as we are aware even litigants before the Courts of Appeals —which have routinely applied the "deliberate indifference" requirement to claims of prison-wide deprivation of medical treatment. See, *e. g., Toussaint* v. *McCarthy,* 801 F. 2d 1080, 1111–1113 (CA9 1986); *French* v. *Owens,* 777 F. 2d 1250, 1254–1255 (CA7 1985).

Of course the concurrence does not say that the deprivation must be imposed upon *all* prisoners to rise to the level of a "condition of confinement" and of "punishment"—only that it does not suffice if directed at "individual prisoners." One wonders whether depriving all the individual prisoners who are murderers would suffice; or all the individual prisoners in Cellblock B. The concurrence's distinction seems to us not only unsupportable in principle but unworkable in practice.

tions. He acknowledges, for instance, that if a prison boiler malfunctions accidentally during a cold winter, an inmate would have no basis for an Eighth Amendment claim, even if he suffers objectively significant harm. Reply Brief for Petitioner 12–14. Petitioner, and the United States as *amicus curiae* in support of petitioner, suggests that we should draw a distinction between "short-term" or "one-time" conditions (in which a state-of-mind requirement would apply) and "continuing" or "systemic" conditions (where official state of mind would be irrelevant). We perceive neither a logical nor a practical basis for that distinction. The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify. As Judge Posner has observed:

> "The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century . . . . [I]f [a] guard accidentally stepped on [a] prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word, whether we consult the usage of 1791, or 1868, or 1985." *Duckworth* v. *Franzen*, 780 F. 2d 645, 652 (CA7 1985), cert. denied, 479 U. S. 816 (1986).

See also *Johnson* v. *Glick*, 481 F. 2d 1028, 1032 (CA2) (Friendly, J.), ("The thread common to all [Eighth Amendment prison cases] is that 'punishment' has been deliberately administered for a penal or disciplinary purpose"), cert. denied *sub nom. John* v. *Johnson*, 414 U. S. 1033 (1973). Cf. *Block* v. *Rutherford*, 468 U. S. 576, 584 (1984); *Bell* v. *Wolfish*, 441 U. S. 520, 537–539 (1979). The long duration of a cruel prison condition may make it easier to *establish* knowledge and hence some form of intent, cf. *Canton* v. *Harris*, 489 U. S. 378, 390, n. 10 (1989); but there is no logical reason

why it should cause the *requirement* of intent to evaporate. The proposed short-term/long-term distinction also defies rational implementation. Apart from the difficulty of determining the day or hour that divides the two categories (Is it the same for *all* conditions?), the violations alleged in specific cases often consist of composite conditions that do not lend themselves to such pigeonholing. Cf. *McCarthy* v. *Bronson*, 500 U. S. 136, 143–144 (1991).[2]

The United States suggests that a state-of-mind inquiry might allow officials to interpose the defense that, despite good-faith efforts to obtain funding, fiscal constraints beyond their control prevent the elimination of inhumane conditions. Even if that were so, it is hard to understand how it could control the meaning of "cruel and unusual punishments" in the Eighth Amendment. An intent requirement is either implicit in the word "punishment" or is not; it cannot be alter-

---

[2] The concurrence, going beyond what both petitioner and the United States have argued here, takes the position that *all* conditions that exist in prison, even though prison officials neither know nor have reason to know about them, constitute "punishment." For the reasons we have described, there is no basis for that position in principle, and it is contradicted by our cases. The concurrence purports to find support for it in two cases, *Hutto* v. *Finney*, 437 U. S. 678 (1978), and *Rhodes* v. *Chapman*, 452 U. S. 337 (1981). In *Hutto*, as the concurrence's description makes clear, the question whether the conditions remedied by the District Court's order constituted cruel and unusual punishment was not at issue. Indeed, apart from attorney's fees, the only element of the order at issue in *any* respect pertained to "punitive isolation," *post*, at 307. Even if one were to think that we passed upon the "cruel and unusual punishment" point uninvited and *sub silentio*, punitive isolation is self-evidently inflicted with punitive intent. As for *Rhodes*, the concurrence describes that as addressing "for the first time a *disputed* contention that the conditions of confinement at a particular prison constituted cruel and unusual punishment." *Post*, at 307 (emphasis in original). What it does not mention is that the only element disputed (as well as the only element decided, see *supra*, at 298) was whether the conditions were a sufficiently serious deprivation to violate the constitutional standard. When that is borne in mind, it is evident that the lengthy quotation from that case set forth in the concurrence, *post*, at 307–309, provides no support, even by way of dictum, for the concurrence's position.

nately required and ignored as policy considerations might dictate. At any rate, the validity of a "cost" defense as negating the requisite intent is not at issue in this case, since respondents have never advanced it. Nor, we might note, is there any indication that other officials have sought to use such a defense to avoid the holding of *Estelle* v. *Gamble*, 429 U. S. 97 (1976).

## II

Having determined that Eighth Amendment claims based on official conduct that does not purport to be the penalty formally imposed for a crime require inquiry into state of mind, it remains for us to consider what state of mind applies in cases challenging prison conditions. As described above, our cases say that the offending conduct must be *wanton*. *Whitley* makes clear, however, that in this context wantonness does not have a fixed meaning but must be determined with "due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." 475 U. S., at 320. Where (as in *Whitley*) officials act in response to a prison disturbance, their actions are necessarily taken "in haste, under pressure," and balanced against "competing institutional concerns for the safety of prison staff or other inmates." *Ibid.* In such an emergency situation, we found that wantonness consisted of acting "'maliciously and sadistically for the very purpose of causing harm.'" *Id.*, at 320–321 (quoting *Johnson*, 481 F. 2d, at 1033). See also *Dudley* v. *Stubbs*, 489 U. S. 1034, 1037–1038 (1989) (O'CONNOR, J., dissenting from denial of certiorari). In contrast, "the State's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities," *Whitley*, *supra*, at 320, so that in that context, as *Estelle* held, "deliberate indifference" would constitute wantonness.

The parties agree (and the lower courts have consistently held, see, *e. g.*, *LaFaut* v. *Smith*, 834 F. 2d 389, 391–392 (CA4 1987)), that the very high state of mind prescribed by

*Whitley* does not apply to prison conditions cases. Petitioner argues that, to the extent officials' state of mind is relevant at all, there is no justification for a standard more demanding than *Estelle*'s "deliberate indifference." Respondents counter that "deliberate indifference" is appropriate only in "cases involving personal injury of a physical nature," and that a malice standard should be applied in cases such as this, which "do not involve . . . detriment to bodily integrity, pain, injury, or loss of life." Brief for Respondents 28–29.

We do not agree with respondents' suggestion that the "wantonness" of conduct depends upon its effect upon the prisoner. *Whitley* teaches that, assuming the conduct is harmful enough to satisfy the objective component of an Eighth Amendment claim, see *Rhodes* v. *Chapman*, 452 U. S. 337 (1981), whether it can be characterized as "wanton" depends upon the constraints facing the *official*. From that standpoint, we see no significant distinction between claims alleging inadequate medical care and those alleging inadequate "conditions of confinement." Indeed, the medical care a prisoner receives is just as much a "condition" of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates. There is no indication that, as a general matter, the actions of prison officials with respect to these nonmedical conditions are taken under materially different constraints than their actions with respect to medical conditions. Thus, as retired Justice Powell has concluded: "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*." *LaFaut*, 834 F. 2d, at 391–392. See also *Lopez* v. *Robinson*, 914 F. 2d 486, 492 (CA4 1990); *Givens* v. *Jones*, 900 F. 2d 1229, 1234 (CA8 1990); *Cortes-Quinones* v. *Jimenez-Nettleship*, 842 F. 2d 556,

558 (CA1), cert. denied, 488 U. S. 823 (1988); *Morgan* v. *District of Columbia*, 263 U. S. App. D. C. 69, 77–78, 824 F. 2d 1049, 1057–1058 (1987).

### III

We now consider whether, in light of the foregoing analysis, the Sixth Circuit erred in affirming the District Court's grant of summary judgment in respondents' favor.

As a preliminary matter, we must address petitioner's contention that the Court of Appeals erred in dismissing, before it reached the state-of-mind issue, a number of claims (inadequate cooling, housing with mentally ill inmates, and overcrowding) on the ground that, even if proved, they did not involve the serious deprivation required by *Rhodes*. A court cannot dismiss any challenged condition, petitioner contends, as long as other conditions remain in dispute, for each condition must be "considered as part of the overall conditions challenged," Brief for Petitioner 36. Petitioner bases this contention upon our observation in *Rhodes* that conditions of confinement, "alone or in combination," may deprive prisoners of the minimal civilized measure of life's necessities. 452 U. S., at 347.

As other courts besides the Court of Appeals here have understood, see *Wellman* v. *Faulkner*, 715 F. 2d 269, 275 (CA7 1983), cert. denied, 468 U. S. 1217 (1984); *Hoptowit* v. *Ray*, 682 F. 2d 1237, 1247 (CA9 1982); *Wright* v. *Rushen*, 642 F. 2d 1129, 1133 (CA9 1981), our statement in *Rhodes* was not meant to establish the broad proposition that petitioner asserts. *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. Compare *Spain* v. *Procunier*, 600 F. 2d 189, 199 (CA9 1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours

per day), with *Clay* v. *Miller*, 626 F. 2d 345, 347 (CA4 1980) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day). To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. While we express no opinion on the relative gravity of the various claims that the Sixth Circuit found to pass and fail the threshold test of serious deprivation, we reject the contention made here that no claim can be found to fail that test in isolation.

After disposing of the three claims on the basis of *Rhodes*, the Court of Appeals proceeded to uphold the District Court's dismissal of petitioner's remaining claims on the ground that his affidavits failed to establish the requisite culpable state of mind. The critical portion of its opinion reads as follows:

> "[T]he *Whitley* standard of obduracy and wantonness requires behavior marked by persistent malicious cruelty. The record before us simply fails to assert facts suggesting such behavior. At best, appellants' claim evidences negligence on appellees' parts in implementing standards for maintaining conditions. Negligence, clearly, is inadequate to support an eighth amendment claim." 893 F. 2d, at 867.

It appears from this, and from the consistent reference to "the *Whitley* standard" elsewhere in the opinion, that the court believed that the criterion of liability was whether respondents acted "maliciously and sadistically for the very purpose of causing harm," *Whitley*, 475 U. S., at 320–321. To be sure, mere negligence would satisfy neither that nor the more lenient "deliberate indifference" standard, so that any error on the point may have been harmless. Conceivably, however, the court would have given further thought to

its finding of "[a]t best . . . negligence" if it realized that that was not merely an argument *a fortiori*, but a determination almost essential to the judgment. Out of an abundance of caution, we vacate the judgment of the Sixth Circuit and remand the case for reconsideration under the appropriate standard.

*It is so ordered.*

JUSTICE WHITE, with whom JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE STEVENS join, concurring in the judgment.

The majority holds that prisoners challenging the conditions of their confinement under the Eighth Amendment must show "deliberate indifference" by the responsible officials. Because that requirement is inconsistent with our prior decisions, I concur only in the judgment.

It is well established, and the majority does not dispute, that pain or other suffering that is part of the punishment imposed on convicted criminals is subject to Eighth Amendment scrutiny without regard to an intent requirement. The linchpin of the majority's analysis therefore is its assertion that "[i]f the pain inflicted is not formally meted out *as punishment by the statute or the sentencing judge,* some mental element must be attributed to the inflicting officer before it can qualify." *Ante,* at 300 (emphasis added). That reasoning disregards our prior decisions that have involved challenges to conditions of confinement, where we have made it clear that the conditions are themselves *part of the punishment,* even though not specifically "meted out" by a statute or judge.

We first considered the relationship between the Eighth Amendment and conditions of confinement in *Hutto* v. *Finney,* 437 U. S. 678 (1978). There, the District Court had entered a series of remedial orders after determining that the conditions in the Arkansas prison system violated the Eighth Amendment. The prison officials, while conceding that the conditions were cruel and unusual, challenged two aspects of

the District Court's relief: (1) an order limiting punitive isolation to 30 days; and (2) an award of attorney's fees.

In upholding the District Court's limitation on punitive isolation, we first made it clear that the conditions of confinement are part of the punishment that is subject to Eighth Amendment scrutiny:

> "The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, 'proscribe[s] more than physically barbarous punishments.' *Estelle* v. *Gamble*, 429 U. S. 97, 102 [(1976)]. It prohibits penalties that are grossly disproportionate to the offense, *Weems* v. *United States*, 217 U. S. 349, 367 [(1910)], as well as those that transgress today's '"broad and idealistic concepts of dignity, civilized standards, humanity, and decency."' *Estelle* v. *Gamble*, *supra*, at 102, quoting *Jackson* v. *Bishop*, 404 F. 2d 571, 579 (CA8 1968). *Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards.*" *Id.*, at 685 (emphasis added).

Focusing only on the objective conditions of confinement, we then explained that we found "no error in the [District Court's] conclusion that, taken as a whole, conditions in the isolation cells continued to violate the prohibition against cruel and unusual punishment." *Id.*, at 687.

In *Rhodes* v. *Chapman*, 452 U. S. 337 (1981), we addressed for the first time a *disputed* contention that the conditions of confinement at a particular prison constituted cruel and unusual punishment. See *id.*, at 344–345. There, prisoners challenged the "double celling" of inmates at an Ohio prison. In addressing that claim, we began by reiterating the various bases for an Eighth Amendment challenge:

> "Today the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' *Gregg* v.

*Georgia*, [428 U. S. 153,] 173 [(1976)], or are grossly disproportionate to the severity of the crime, *Coker* v. *Georgia*, 433 U. S. 584, 592 (1977) (plurality opinion); *Weems* v. *United States*, 217 U. S. 349 (1910). Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.' *Gregg* v. *Georgia, supra,* at 183; *Estelle* v. *Gamble,* 429 U. S. 97, 103 (1976).

"No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.' *Trop* v. *Dulles,* 356 U. S. 86, 101 (1958) (plurality opinion)." *Id.,* at 346 (footnote omitted).

We then explained how those principles operate in the context of a challenge to conditions of confinement:

"*These principles apply when the conditions of confinement compose the punishment at issue.* Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. In *Estelle* v. *Gamble, supra,* we held that the denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose. 429 U. S., at 103. In *Hutto* v. *Finney, supra,* the conditions of confinement in two Arkansas prisons constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivations of basic human needs. Conditions other than those in *Gamble* and *Hutto,* alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency that we recog-

nized in *Gamble, supra,* at 103–104." *Id.,* at 347 (emphasis added).

Finally, we applied those principles to the conditions at issue and found that "there is no evidence that double celling under these circumstances either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." *Id.,* at 348. *Rhodes* makes it crystal clear, therefore, that Eighth Amendment challenges to conditions of confinement are to be treated like Eighth Amendment challenges to punishment that is "formally meted out *as punishment* by the statute or the sentencing judge," *ante,* at 300—we examine only the objective severity, not the subjective intent of government officials.

The majority relies upon our decisions in *Louisiana ex rel. Francis* v. *Resweber,* 329 U. S. 459 (1947); *Estelle* v. *Gamble,* 429 U. S. 97 (1976); and *Whitley* v. *Albers,* 475 U. S. 312 (1986), but none of those cases involved a challenge to conditions of confinement. Instead, they involved challenges to specific acts or omissions directed at individual prisoners. In *Gamble,* for example, the challenge was not to a general lack of access to medical care at the prison, but to the allegedly inadequate delivery of that treatment to the plaintiff. Similarly, in *Whitley* the challenge was to the action of a prison guard in shooting the plaintiff during a riot, not to any condition in the prison. The distinction is crucial because "unlike 'conduct that does not purport to be punishment at all' as was involved in *Gamble* and *Whitley,* the Court has not made intent an element of a cause of action alleging unconstitutional conditions of confinement." *Gillespie* v. *Crawford,* 833 F. 2d 47, 50 (CA5 1987) *(per curiam),* reinstated in part en banc, 858 F. 2d 1101, 1103 (CA5 1988).

Moreover, *Whitley* expressly supports an objective standard for challenges to conditions of confinement. There, in discussing the Eighth Amendment, we stated:

"An express intent to inflict unnecessary pain is not required, *Estelle* v. *Gamble,* 429 U. S. 97, 104 (1976) ('de-

liberate indifference' to a prisoner's serious medical needs is cruel and unusual punishment), and *harsh 'conditions of confinement' may constitute cruel and unusual punishment* unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.' *Rhodes* v. *Chapman*, 452 U. S. 337, 347 (1981)." 475 U. S., at 319 (emphasis added).

The majority places great weight on the subsequent dictum in *Whitley* that "'[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Ibid.* See *ante*, at 298–299. The word "conduct" in that statement, however, is referring to "conduct that does not purport to be punishment at all," 475 U. S., at 319, rather than to the "harsh 'conditions of confinement'" referred to earlier in the opinion.

Not only is the majority's intent requirement a departure from precedent, it likely will prove impossible to apply in many cases. Inhumane prison conditions often are the result of cumulative actions and inactions by numerous officials inside and outside a prison, sometimes over a long period of time. In those circumstances, it is far from clear whose intent should be examined, and the majority offers no real guidance on this issue. In truth, intent simply is not very meaningful when considering a challenge to an institution, such as a prison system.[1]

---

[1] It is telling that the lower courts often have examined only the objective conditions, and not the subjective intent of government officials, when considering Eighth Amendment challenges to conditions of confinement. See, *e. g.*, *Tillery* v. *Owens*, 907 F. 2d 418, 426–428 (CA3 1990); *Foulds* v. *Corley*, 833 F. 2d 52, 54–55 (CA5 1987); *French* v. *Owens*, 777 F. 2d 1250, 1252–1254 (CA7 1985), cert. denied, 479 U. S. 817 (1986); *Hoptowit* v. *Spellman*, 753 F. 2d 779, 784 (CA9 1985).

The majority's approach also is unwise. It leaves open the possibility, for example, that prison officials will be able to defeat a § 1983 action challenging inhumane prison conditions simply by showing that the conditions are caused by insufficient funding from the state legislature rather than by any deliberate indifference on the part of the prison officials. See *ante*, at 301–302.[2] In my view, having chosen to use imprisonment as a form of punishment, a State must ensure that the conditions in its prisons comport with the "contemporary standard of decency" required by the Eighth Amendment. See *DeShaney* v. *Winnebago Cty. Dept. of Social Services*, 489 U. S. 189, 198–200 (1989). As the United States argues: "[S]eriously inhumane, pervasive conditions should not be insulated from constitutional challenge because the officials managing the institution have exhibited a conscientious concern for ameliorating its problems, and have made efforts (albeit unsuccessful) to that end." Brief for United States as *Amicus Curiae* 19. The ultimate result of today's decision, I fear, is that "serious deprivations of basic human needs," *Rhodes*, 452 U. S., at 347, will go unredressed due to an unnecessary and meaningless search for "deliberate indifference."

---

[2] Among the lower courts, "[i]t is well established that inadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement." *Smith* v. *Sullivan*, 611 F. 2d 1039, 1043–1044 (CA5 1980). See also, *e. g.*, *Wellman* v. *Faulkner*, 715 F. 2d 269, 274 (CA7 1983), cert. denied, 468 U. S. 1217 (1984); *Ramos* v. *Lamm*, 639 F. 2d 559, 573, n. 19 (CA10 1980), cert. denied, 450 U. S. 1041 (1981); *Battle* v. *Anderson*, 564 F. 2d 388, 396 (CA10 1977); *Gates* v. *Collier*, 501 F. 2d 1291, 1319 (CA5 1974).