Thomas E. MYERS

v.

MARYLAND DIVISION
OF CORRECTION.

Edward L. HENSLEY, et al.

v.

Arnold HOPKINS, et al.

Civ. Nos. JFM–87–3008, JFM–88–823.

United States District Court,
D. Maryland.

Jan. 30, 1992.

Susan Gauvey, Venable, Baetjer and Howard, and Joseph Young, Hogan and Hartson, Baltimore, Md., for plaintiffs.

Maureen Dove, Asst. Atty. Gen., Baltimore, Md., for defendants.

MEMORANDUM

MOTZ, District Judge.

These consolidated actions concern the questions raised by the presence of HIV

positive inmates within prison populations. Plaintiffs, inmates of the Maryland prison system who have no reason to believe that they are HIV positive, originally filed the actions *pro se*, requesting various forms of relief, including the mandatory segregation of HIV positive inmates. I appointed counsel to represent them. Perceiving a potential diversion of interests among different groups of inmates, I also appointed counsel to represent, as intervening defendants, a group of inmates who are HIV positive.[1] The named defendants are the warden of the Maryland Correctional Training Center, where the plaintiffs were incarcerated at the time that the original complaint was filed, and the commissioner of the Maryland Division of Correction ("DOC"). All parties have moved for summary judgment.

This opinion is a short one. That is so not because the issues presented are not serious but because they have largely been resolved by operational changes which DOC has instituted since these actions were filed. Under the policies and programs which it now has in effect, DOC provides (1) extensive education for inmates on AIDS-related issues, (2) HIV testing for all incoming inmates who request such testing, (3) testing for all inmates in the standing population who request to be tested if a physician has made a clinical judgment that testing is appropriate and (4) involuntary testing for inmates who have been found guilty of the violation of an institutional regulation which causes potential exposure to the HIV virus.[2]

The sole remaining issues are whether the DOC should further amend its policies (1) to institute a program of mandatory testing for all inmates, and (2) to consider an inmate's HIV status in making housing and work assignments. Plaintiffs request such amendments; intervening defendants oppose them.

■ Plaintiffs' claims arise under the cruel and unusual punishment clause of the Eighth Amendment. The parties are essentially agreed that a two-pronged standard applies to those claims: plaintiffs must show that (1) a pervasive risk of harm to DOC inmates exists under the current DOC policies and programs, and (2) defendants have been deliberately indifferent to that risk. *See generally Wilson v. Seiter,* —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Glick v. Henderson,* 855 F.2d 536 (8th Cir.1988).

■ I find that plaintiffs have met the first prong of this test. Despite the fact that DOC officials make efforts to enforce institutional regulations prohibiting such high-risk activities as IV drug usage, consensual sex, rape and tattooing, according to defendants' own expert 60 to 70 inmates annually become infected with HIV. Furthermore, an uninfected inmate has a 1 in 200 chance of contracting HIV during each year of his prison stay. In my judgment this constitutes a pervasive risk of harm in the view of any fair-minded person.

Plaintiffs have not, however, presented evidence demonstrating that defendants have been deliberately indifferent to the risk of harm which does exist. To the contrary, it is undisputed that the policies and programs which DOC has instituted fall well within the norm of those instituted by other state prison systems. They also conform to applicable community standards outside of the prison context and have been established on the basis of the opinions of experts with whom DOC has consulted.

Perhaps other measures could have been taken instead. As the Eleventh Circuit has indicated, "two bodies of thought currently exist within correctional and public health communities regarding HIV and AIDS prevention in prisons: mandatory testing and separation versus voluntary testing and education." *Harris v. Thigpen,* 941 F.2d

---

1. Counsel for all the parties have handled this case in a highly professional manner. I am particularly appreciative of the work done by appointed counsel. They have performed a substantial public service, and they and their firms are to be commended for having taken on this *pro bono* assignment.

2. The fourth of these measures is required by Md. Health–General Code Ann. § 18–338(b).

1495, 1519 (11th Cir.1991). That fact, however, is hardly dispositive. DOC has made a reasoned choice between alternative approaches to a problem of extreme complexity. That is all which can be expected of it, and its decision must be given deference by this court. *See generally Bell v. Wolfish,* 441 U.S. 520, 548, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 126, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977); *Holt v. Norris,* 871 F.2d 1087 (table) No. 88–5979, 1989 WL 25539 at *4, 1989 U.S.App. LEXIS 2147 at *4 (6th Cir. Feb. 24, 1989); *Jarrett v. Faulkner,* 662 F.Supp. 928, 929 (S.D.Ind. 1987).[3]

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 30th day of January 1992

ORDERED

1. Plaintiffs' motion for summary judgment is denied;

2. The motions for summary judgment filed by defendants and intervening defendants are granted; and

3. Judgment is entered in favor of defendants and intervening defendants against plaintiffs.

---

**3.** Plaintiffs assert as an alternative, subsidiary claim that, even if mandatory testing is not required for all inmates, the equal protection clause requires DOC to make testing available upon demand to all inmates in the standing population just as it does for all incoming inmates. Defendants have candidly stated that the State simply cannot afford to provide such testing. I need not decide whether or not this defense in and of itself would be adequate. *Cf. Wilson v. Seiter,* —— U.S. ——, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). The uncontradicted evidence establishes that DOC's policy of providing voluntary testing for any inmate in the standing population for whom a physician recommends it is fully in accord with the prevailing community standard. The fact that DOC may provide an even greater opportunity for voluntary testing to incoming inmates does not dictate that it expend monies which it cannot afford to provide that opportunity for all other inmates. Indeed, as a practical matter plaintiffs' argument would seem to be self-defeating since their general interest is to increase the amount of testing and since, if they were to prevail on their equal protection claim, DOC presumably could simply amend its policy to deny testing upon request to all incoming inmates.