WISDOM, Circuit Judge,
with whom POLITZ, Chief Judge, and WIENER and DENNIS, Circuit Judges, join, dissenting:
In what amounts to social engineering by judicial fiat, the panel majority has decided that as a matter of constitutional imperative, the city must maintain a minimum of two male guards, or at least one female guard whenever a female detainee is present.[1]
New times demand new measures and new men;
The world advances, and in time outgrows the laws which in our fathers day were best; And, doubtless, after us, some purer scheme Will be shaped by wiser men than we, Made wiser by the steady growth of truth.[2]
Today, a majority of this court sitting en bane concluded that the sexual assault of a pretrial detainee at the hands of an unsupervised male guard does not justify even the development of a record in the district court. I cannot concur in such a result. As I see it, *56 the majority misconstrues the plaintiffs complaint and applies the wrong legal standard. Moreover, under any appropriate legal standard, the plaintiff has raised fact issues that warrant trial.
As stated in the panel opinion in this case, the constitutional right at issue is Scott’s fourteenth amendment right to minimal levels of safety and security.[3] Scott complains that the policy of having only one guard on duty in the jail did not meet those minimal requirements. The question we remanded to the district court, then, concerned whether the city’s policy rose to the level of a constitutional violation. We did not decide the issue, and thus engaged in no “social engineering”. Rather, we concluded that this case had identified a developing issue; the same issue that is illustrated by the explosion of sexual harassment cases in this country,[4] and by the problems encountered in the military of late.[5] The issue concerns the realities of human nature in situations where one individual occupies a position of substantial authority relative to another. The situations or, more accurately, relationships are myriad: supervisor to employee, military officer to soldier, guard to pretrial detainee. Whatever the relationship, it is abundantly clear that our society is beginning to recognize these as potentially volatile situations.
The volatile situation in the present case becomes deeply suspect when viewed in the light of the proper legal standards. In Hare v. City of Corinth, we stated that, in cases involving general conditions of confinement, the proper standard by which to evaluate a city’s policy is whether the policy is reasonably related to a legitimate government purpose.[6] Where the conduct in question is episodic, analysis under the deliberate indifference standard is appropriate. The settled, long established system for staffing a jail is clearly a condition of confinement and not an episodic act.
Something that is episodic is, by definition, incidental or occasional. The conduct in question here was the antithesis of episodic; it was regular and systematic. The staffing practice complained of had been in place for twenty years. In justifying its application of the deliberate indifference standard, the majority insists that the conduct complained of in this case was, in fact, episodic: “Although the plaintiff complains generally of inadequate staffing ... the actual harm of which she complains is the sexual assaults committed by Moore.” This statement, unsupported by the record, focuses on the wrong conduct, the wrong actor, and changes the nature of the plaintiffs complaint entirely. In distinguishing this case from others involving conditions of confinement, the majority suggests that in jail conditions eases, “the conditions themselves constitute the harm.” In this case, this distinction is meaningless. The majority states that the conditions themselves constitute the harm where, for example, inadequate food or sanitary conditions are involved. In each of these eases, however, a policy results in a harm: inadequate food results in malnourishment; unsanitary conditions result in disease. The instant ease is no different. The policy of inadequate staffing enabled the harm to be committed and actually facilitated the harm— sexual assault.[7] Once the focus is shifted to *57 the conduct actually complained of, the long established custom of inadequate staffing, it is apparent that such conduct was far from episodic.[8] The mischaracterization of this case as one involving an episodic act allows the majority to assess it under the deliberate indifference standard.[9]
Noting that the city offered only financial justifications for its staffing policy, the panel majority concluded that Scott had raised a fact issue sufficient to preclude summary judgment. We therefore remanded the case for the development of a record. We laid down no rule regarding a required number or gender of guards. We simply recognized the possibility that the Constitution requires more than was provided in this case. As the majority states, “the evidence proffered by Scott may be construed to suggest that ... the city lacked sufficient prescience to anticipate that a well-trained jailer would, without warning, assault a female detainee.” Stated another way, the issue we identified becomes clear: perhaps the city should be required to do more than leave a female pretrial detainee at the absolute, unfettered, and unsupervised authority of a male guard, regardless of how well trained he might be.
The majority opinion is, regrettably, a subterfuge to avoid opening the floodgates of litigation. I recognize that courts are to avoid becoming enmeshed in the minutia of prison conditions.[10] I am unwilling, however, to classify the issues in this case as “minutia”.
Because I believe that Scott’s claim properly raised a constitutional issue and an associated fact question, I would remand the case to the district court. Accordingly, I respectfully dissent.

. Scott v. Moore, 85 F.3d 230, 236 (5th Cir.1996)(Smith, J., dissenting).

. James Russell Lowell, "A Glance Behind the Curtain,” 1843 in Complete Poetical Works of James Russell Lowell 49, 51 (Horace E. Scudder ed.1925).

. Scott, 85 F.3d at 235.

. From 1990 to 1996, the number of sexual harassment claims filed with the Equal Employment Opportunity Commission rose 250 percent. Statistic supplied by the Equal Opportunity Commission, Office of Public Affairs.

. A 1990 study by the Defense Manpower Data Center, 64 percent of the females studied had been victims of sexual harassment in the previous year. DEFENSE MANPOWER DATA CENTER, SEXUAL HARASSMENT IN THE MILITARY: 1988 11 (1990). See also John Lancaster, Tailhook Probe Implicates 140 Officers; Pentagon Report Calls 90 Assaults at Navy Convention "Failure of Leadership", Wash. Post, Apr. 24, 1993, at Al.

. Hare, 74 F.3d at 643.

. Indeed, in comparing medical care with other conditions of confinement, the Supreme Court stated that “the medical care a prisoner receives is just as much a condition of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates." Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326-27, 115 L.Ed.2d 271 (1991) (emphasis added). If protection from other inmates is a condition of confinement, then protection from a guard is a condition of confinement.

. To illustrate, the conduct in this case could be construed as episodic if, for example, the jail had normally had some system of supervision in place and only on this particular occasion was a lone male guard left to supervise a female detainee for an extended period. As stated above, this was not the case.

. I recognize our statement in Hare that the objective deliberate indifference test is functionally equivalent to the reasonable relationship test employed in cases involving conditions of confinement. Hare, 74 F.3d at 643. I believe that under either standard, however, Scott has raised a fact issue.

. Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979).