[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The pro se petitioner, Eugene Copeland, filed a Petition for a Writ of Habeas Corpus on April 5, 2001 claiming that the Department of Corrections has failed to provide him with the proper medical care for his chronic degenerated hip disease. The petition requests "injunctive relief' in the form of hip replacement surgery. The petitioner argues that he has not received proper medical care and treatment for his medical condition constituting "cruel and unusual treatment and punishment" in violation of the Eighth Amendment of the United States Constitution made applicable to the states by the Fourteenth Amendment. The plaintiff claims he was arrested on January 8, 2001 and was being held in custody in lieu of bond under a "pre-sentence status" by the Department of Corrections. According to the petitioner at his initial hearing before this court on December 17, 2001, the petitioner was being held in custody pending the resolution of charges which included "assault on a peace officer," "interfering (with a police officer)" and "some motor vehicle charges." The petitioner at all times herein was being represented by a special public defender for his criminal and motor vehicle charges. On July 26, 2002, the petitioner informed the court that his pending criminal and motor vehicle charges had been resolved in the Superior Court Judicial District of Ansonia-Milford, and that as a result, the petitioner was now a sentenced prisoner. The petitioner informed the court that he had received "a five year sentence" subject to any applicable time credits for his pre-sentence period of incarceration. The petitioner stated that his parole eligibility date would be July 8, 2003.
On August 26, 2002, the petitioner informed the court that he had been transferred to the Cheshire Correctional Institution since June 23, 2002, following periods of time at "Corrigan, Walker and Whalley Avenue." He restated that he had received a sentence that included five years of incarceration subject to his pre-sentence incarceration credit, with a parole eligibility date in the Spring or Summer of 2003. CT Page 15664
As stated herein, the petition was filed on April 5, 2001. Pursuant to Practice Book § 23-30, the respondent, Warden, filed a return and special defenses to the petition on August 22, 2001. The respondent denies the petitioner's allegations and argues that the petitioner's complaints regarding his chronic degenerative hip condition have been addressed properly by the rendering of proper medical care, treatment and medicine.
The court commenced a hearing on the petition on December 17, 2001. Hearings were thereafter held on February 13, 2002, May 6, 2002, June 25, 2002, August 26, 2002, and September 9, 2002 when the hearings were concluded.
A brief statement of the facts is appropriate. In November, 1995, the petitioner was serving an unrelated twenty-two year sentence and was incarcerated at the J.B. Gates Correctional facility in Niantic, Connecticut. At that time the medical staff for the Department of Corrections diagnosed the petitioner as suffering from severe osteoarthritis of the left hip. The petitioner was prescribed medication for his pain and discomfort.
Subsequently in July, 1996 the petitioner was released to an inpatient community release program known as Cross Roads, Inc. The petitioner thereafter, continued to receive medical care and treatment from the Department of Corrections for his left hip condition. The petitioner continued to complain about his hip condition and was examined by various physicians throughout 1997 and 1998. The petitioner was consistent in demanding surgery for his hip, but the treating physicians refused to recommend hip replacement surgery.
On or about June 15, 1999, the petitioner was approved for community release for "long term inpatient treatment" for substance abuse. On several occasions thereafter, the petitioner continued to request medical attention from the medical staff at his substance abuse treatment facility and from the medical staff at the Garner Correctional Institute. The medical staff at these facilities continued to deny the petitioner's requests for surgery to his left hip. The petitioner's treatment included medical recommendations that the petitioner was to have limitations on his physical activities.
In May, 2000, the petitioner was released from the custody of the Department of Corrections. Upon his release the petitioner sought a medical evaluation and treatment for his hip from Dr. McCallum, a private, orthopedic specialist. After reviewing the petitioner's medical records from the Department of Corrections and conducting his own examination, Dr. McCallum presented the petitioner with treatment options CT Page 15665 for his medical condition. These options included surgical and non-surgical treatment. Dr. McCallum's report of November 28, 2000 states that the petitioner "is interested in pursuing definitive management with a left total hip orthroplasty," and that the petitioner will contact the doctor's office to schedule the surgery. The petitioner has had no further treatment from Dr. McCallum since his arrest and incarceration on January 8, 2001.
The petitioner has continued to demand hip replacement surgery, and has brought this petition requesting that the court order the Department of Corrections to properly treat the petitioner's degenerative left hip by allowing the petitioner to have hip replacement surgery, in accordance with Dr. McCallum's findings.
At the time of the court's initial hearing on this petition, held on December 17, 2001, the Department of Corrections had referred the petitioner to an orthopedist for treatment and evaluation of his hip condition. The orthopedist did not recommend surgical intervention and requested that the petitioner be re-evaluated in January, 2002. The petitioner was provided with a thicker mattress for his cell and placed on a limited physical activity status. He had been placed in a bottom bunk and was not required to leave his cell for his meals. The respondent, through Dr. Blanchette, testified that in the future the odds were very good that the petitioner would need a total hip replacement. The respondent agreed that if surgery was recommended, the petitioner would have the surgery. The petitioner and the respondent agreed on December 17, 2001, that the parties would await the orthopedist's recommendations before proceeding further. Thereafter the hearing was continued to February 13, 2002. The parties also expressed hope that the petitioner's pending criminal charges would be resolved, so that the petitioner's continued status regarding incarceration would be clarified.
On February 13, 2002, the court was informed that the defendant would be sentenced for his pending criminal and motor vehicle charges on April 5, 2002. The court was also informed that the evaluation of the petitioner's left hip was to be re-scheduled for a date subsequent to the April 5, 2002 sentencing so as to determine the petitioner's incarceration status, as the petitioner had reserved a right to argue for a suspended sentence on April 5, 2002. The hearing on the subject petition was thereafter continued to May 6, 2002.
On May 6, 2002, the court was informed that the petitioner was examined by an orthopedist on April 19, 2002 at the University of Connecticut Health Center at Farmington, Connecticut. Medical records indicated that the petitioner has a neurological condition that may complicate giving CT Page 15666 him hip replacement surgery. The orthopedist concluded that he wished to consult with his medical peers regarding the petitioner's condition and to review the petitioner's "outside medical records." The orthopedist also wished to consult with a neurologist. The next medical visit was scheduled for May 19, 2002. In the interim, the petitioner was prescribed medication and the hearing was continued to June 25, 2002.
On June 25, 2002, the court was informed that the petitioner was examined again at the University of Connecticut Health Center on June 14, 2002. The medical report of Dr. MacDonald recommended non-surgical treatment for the petitioner's hip condition. The petitioner was supplied with a cane, a double mattress and was prescribed Tylenool III with codeine for his pain. He was also advised to follow a specific exercise program. Dr. Blanchette, the clinical director for the Department of Corrections testified that he had reviewed Dr. MacDonald's evaluation of the petitioner's condition and concurred with it. Dr. MacDonald diagnosed the petitioner with osteoarthritis in the spine and degenerative joint disease. The recommended treatment was prolonged conservative management as opposed to immediate surgical intervention.
The petitioner Copeland, while continuing to argue for surgical intervention, agreed to follow the physicians' recommendations to ascertain if a program of non-surgical intervention would alleviate his pain. Once again, the hearing was continued to allow the petitioner to follow the prescribed course of treatment.
On August 26, 2002, the hearing resumed. The petitioner testified that the physical therapy program at the Cheshire Correctional Institute was inadequate for his needs, but he was, in fact, getting some relief for his hip condition. He was receiving his prescribed medications and was being fitted for specialized shoes. He had received a special mattress. The petitioner has been given "range of motion" exercises to promote his mobility, which the petitioner can perform on his own, and do not require access to a gym or physical therapy facility. The petitioner does have access during the week to exercise areas. The petitioner is currently housed in a special unit with handicap ramps to limit his necessity to climb up or down stairs. The shower and toilet facilities are equipped with grab bars to assist the petitioner in using these areas.
The court then continued the hearing until September 9, 2002, when the parties appeared and presented their final arguments and the hearing was concluded.
The gravamen of the petitioner's complaint is that he is being subjected to cruel and unusual punishment in violation of the Eighth CT Page 15667 Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment. Robinson v. Calfornia, 370 U.S. 660
(1962). The Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity and decency. . . ." Jackson v.Bishop, 404 F.2d 571, 579, against which we must evaluate penal measures. "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely upon prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle v. Gamble, 429 U.S. 97 (1976). Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wonton infliction of pain proscribed by the Eighth Amendment. Gregg v. Georgia,428 U.S. 153 (1976). This is true whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment, once it is prescribed. Estelle v. Gamble, supra 429 U.S. 104-105. However, inadvertent failure to provide adequate medical care is not an unnecessary and wonton infliction of pain. Id., at 105.
The claim of a deliberate indifference by the respondent to the petitioner's medical needs is subject to a two prong standard. First, the alleged deprivation must be, in objective terms, "sufficiently serious."Hathaway v. Coughlin, 37 F.3d 63 (2d Cir. 1994); Wilson v. Seiter,501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Second, the charged official must act with a sufficiently culpable state of mind. See Wilson v. Seiter, supra, 501 U.S. at 298. Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan,511 U.S. 825, 114 S.Ct., 1970, 1978 (1994). "A prison official does not act in a deliberately indifferent manner unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., at 838, 114 S.Ct. at 1979; Hathaway v. Coughlin, supra,37 F.3d 63 (2d Cir. 1994).
In applying the two prong test regarding "deliberate indifference" to the petitioner's case, the court finds that the petitioner has failed to sustain his burden of proving that he is being denied the proper medical care, medications and treatment. The record and the testimony do not substantiate that the petitioner, Copeland, has medical needs that rise to the level of"a condition of urgency, one that may produce death, degeneration or extreme pain." See Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting). CT Page 15668
The testimony and the record fail to support the petitioner's claim that the respondent and the medical staffs at various Dept. of Corrections facilities were deliberately indifferent to the petitioner's medical needs, in that they knew of and disregarded any excessive risks to the petitioner's health. The record reveals that the petitioner was repeatedly seen by the medical personnel for his hip condition and other unrelated health complaints. The required medical attention and care, has been provided in a timely and appropriate manner. While the petitioner may be dissatisfied with the ultimate findings and recommended course of treatment, there is little doubt that he has received a thorough evaluation of his medical condition and a specific recommendation for a medically acceptable course of treatment.
While all parties, hereto, agree that the petitioner's condition causes him pain, he has been prescribed medication and exercises to alleviate that pain. Additionally, he has received a double-thick mattress and has been fitted for special footware. He has been housed in a unit equipped with ramps so that he does not have to negotiate stairs on a regular basis. The shower and toilet facilities are equipped with grab bars to promote his stability when using them. The petitioner's hip condition, as medically diagnosed, is not of the life-threatening category.
Accordingly, for the reasons set forth herein, the petition for a writ of habeas corpus and injunctive relief is hereby dismissed.
The Court
 by ___________________ Arnold, J.
CT Page 15669