## Ismail A. RAHEEM, Plaintiff–Appellant,

### v.

Tracy STOUT, Officer; Moskalik, Dr.; Brady, Dr.; Cheryl Jonas, R.N.; Osher, R.N.; D. Ankney, R.N.; Correctional Medical Services, Defendants–Appellees.

### No. 03–2229.

United States Court of Appeals, Sixth Circuit.

June 11, 2004.

Ismail A. Raheem, Kincheloe, MI, pro se.

Linda M. Olivieri, Office of the Attorney General, Corrections Division, Lansing, MI, Ronald W. Chapman, Kimberley A. Koester, Chapman & Associates, Bloomfield Hills, MI, for Defendants–Appellees.

Before: BOGGS, Chief Judge; MOORE, Circuit Judge; and QUIST, District

Judge.*

## ORDER

Ismail A. Raheem, a pro se Michigan prisoner, appeals a district court judgment dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Seeking monetary relief, Raheem sued several prison medical personnel, a prison guard, and Correctional Medical Services, Inc. (CMS), a private corporation which provides medical services to Michigan prisoners. Raheem alleged that the defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Upon de novo review of a magistrate judge's report, the district court dismissed the complaint for failure to state a claim.

In his timely appeal, Raheem states that the district court ignored controlling authority and that he established that the defendants were deliberately indifferent to his medical needs.

The district court's judgment is reviewed de novo. *See Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1239–40 (6th Cir.1993). The court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Id.* at 1240.

Raheem alleged that on February 9, 2000, he slipped and fell on "black-ice" in

the prison yard at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. He was not x-rayed until March 1, 2000, when it was first discovered that he had sustained a "[m]inimally displaced fibular fracture of the left ankle." Stout is a corrections officer who was present when Raheem fell, and allegedly "forced" Raheem to walk back to his cell until LCF Medical Services was called and provided Raheem with a wheelchair. Jonas is a registered nurse who, upon examining Raheem's ankle, allegedly wrapped the area and asked Raheem if he wanted one or two crutches. Raheem stated that Jonas gave him two crutches with "defective" rubber tips. Raheem stated that although Jonas noted that his ankle was swollen and discolored, no x-rays were immediately ordered, nor was he given ice or pain medication. Raheem alleged that he was examined by registered nurse Osher roughly a week later, who took the crutches from him to see if he could walk without them. Raheem stated that once his shoe was removed, the swelling in his foot and ankle prevented him from putting his shoe back on. Raheem alleged that Osher rewrapped his ankle and sent him away with his crutches, without pain medication or a "lay-in" to have his meals delivered to his cell.

Raheem stated that Dr. Moskalik examined him on February 17, 2000, eight days after the incident, informed Raheem that he would be getting a "lay-in" detail, and that he was scheduled to be x-rayed in three or four days. However, Raheem stated that Dr. Moskalik did not order ice or pain medication. Raheem alleged that Ankney, a registered nurse, issued him a four-day lay-in for February 22–26, 2000. Raheem alleged that his ankle was x-rayed

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

on March 1, 2000, and the fracture was discovered. As a result, he was given a splint and told to elevate his ankle. Four or five days later, his ankle was placed in a cast.

Raheem alleged that he filed a grievance regarding the continued refusal to have his mail and meals delivered to his cell. He complained that he slipped on March 21 and 22, 2000, due to the defective crutches, and nearly reinjured his ankle. Raheem stated that Dr. Moskalik subsequently refused to grant his requests for lay-in meals. He alleged that on May 7, 2000, he was instructed to order his own "gym shoes" and informed authorities that he had been provided with "the wrong foot brace." He was authorized for a ninety-day medical detail, for an ankle brace, and "arch support cushioned insoles" on August 18, 2000. However, the detail was reduced to thirty days on August 26, 2000.

Raheem asserted that after being transferred to the Adrian Temporary Correction Facility on September 19, 2000, he informed Dr. Kahawaja that his ankle was "locking" and that the only treatment he was currently receiving was pain pills. Raheem stated that a nurse responded on October 17, 2000, to his continuing inquiries stating that the "x-ray did not indicate a problem with his ankle, and waiting for shoe to arrive." Raheem stated he complained to Dr. Brady on December 21, 2000, and on March 18, 2001, that he was out of medication, still had discomfort, and had yet to receive his orthopedic shoes. Raheem alleged that Dr. Brady ordered shoes on March 23, 2001, and on May 17, 2001, he was informed by authorities that "he was issued the wrong kind of insoles for his shoes." Raheem alleged that he inquired about therapy on March 21, 2002. After being transferred to the Jackson Cooper Street Correctional Facility, he made a second inquiry on June 26, 2002.

Raheem stated that his request for therapy was denied. Raheem alleged that during the time he had the cast on his leg from March 2000 to May 26, 2000, he was denied a request for mineral oil to treat his "extremely dry and itchy skin."

CMS is a private corporation that contracts with the state of Michigan to provide medical services to prisons. The corporation employs Drs. Moskalik and Brady.

Raheem's Eighth Amendment claim is construed as arguing that the defendants' failure to properly diagnose and promptly treat his broken ankle after he fell violated his constitutional rights. In order to constitute a claim under the Eighth Amendment, the offending conduct must reflect an unnecessary and wanton infliction of pain. *See Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Such a claim has both an objective and subjective component. *Wilson v. Seiter,* 501 U.S. 294, 297–303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The objective component of an Eighth Amendment claim requires that the pain be serious. *Id.* at 298. The Supreme Court addressed the objective component in *Rhodes v. Chapman,* 452 U.S. 337, 346–49, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The subjective component, in contrast, constitutes the deliberate indifference standard of *Estelle v. Gamble,* 429 U.S. 97, 101–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See Wilson,* 501 U.S. at 302. The subjective component provides that the offending conduct be wanton. *Id.* The facts do not establish how the defendants' conduct inflicted pain or constituted deliberate indifference.

It is clear from the complaint that the defendants were not deliberately or wantonly indifferent to Raheem's serious medical needs. The defendants did not refuse to provide Raheem medical care and their conduct did not lead to injuries which

could have been prevented with timely attention. Although Raheem may not be satisfied with the type of medical care he received after he injured his ankle, the facts, as alleged by Raheem, establish that prison personnel were responsive to Raheem's medical condition. Thus, the defendants did not demonstrate a wanton indifference to Raheem's needs. Further, even if Raheem received erroneous treatment, medical malpractice does not give rise to a constitutional violation under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

Accordingly, we affirm the district court's judgment. Rule 34(j)(2)(C), Rules of the Sixth Circuit.