980 F.2d 733
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roy W. WATSON, Plaintiff/Appellant,
v.
Edward COHN, et al, Defendants/Appellees.
 No. 92-1250.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 22, 1992.*
Decided Dec. 3, 1992.
 
 Before COFFEY, EASTERBROOK and WOOD, JR., Circuit Judges.
 
 ORDER
 
 1
 Roy Watson brought an action under 42 U.S.C. § 1983, alleging that several prison officials at the Indiana Reformatory violated his Fourteenth and Eighth Amendment rights. He argued that they failed to adequately protect him from other inmates, failed to transfer him to a safe facility and conspired to cover up the facts surrounding his transfer request. The district court granted summary judgment for the defendants. The court also sanctioned Watson for Rule 11 violations in the amount of one dollar for failure to sign his complaint and interrogatories. We affirm in part and reverse in part.
 
 BACKGROUND
 
 2
 Roy Watson was an inmate at the Indiana Reformatory. On September 7, 1986, Watson and one of the defendants, Sergeant Don Semler, were stabbed by another inmate, Robert Smith.
 
 
 3
 Two days before the attack, Semler had removed an extra mattress from Smith's cell and instructed Watson to place it in another cell. Smith threatened Watson for removing the mattress, and Watson notified Semler of the threats. Semler then told Smith and Smith's friends that he personally had removed the mattress from the cell, not Watson.
 
 
 4
 On September 7, 1986, Watson assisted Semler again. Watson contends that Semler again told him to remove a mattress from Smith's cell. Semler stated in his affidavit that he never instructed Watson to enter Smith's cell. According to Watson, when Smith learned the mattress was going to be removed, he became angry and began hitting Watson.
 
 
 5
 Officers Morgan and Semler saw Smith hitting Watson. They intervened, calling for more help and attempting to pull Smith away from Watson. By the time other officials arrived, Smith had stabbed both Watson and Semler with a homemade knife. Watson and Smith were taken to the hospital.
 
 
 6
 When Watson returned to the prison, he was again threatened by Smith and his friends. Watson argued that by later testifying against Smith about the attack on Semler and Watson, he suffered an increased risk of danger from Smith's gang members. Watson requested a transfer to the Indiana Youth Center. The request was denied for administrative reasons. Watson was offered a choice of protective custody at the Reformatory or a transfer to one of the other facilities. He turned the offers down.
 
 
 7
 In September 1988, Watson filed suit against several prison officials in their individual and official capacities. Watson asserted that in violation of his Eighth and Fourteenth Amendment rights, the defendants failed to protect him from violence and harassment, refused his request for a transfer, and conspired to cover up the facts surrounding his denial of transfer to the Indiana Youth Center.
 
 
 8
 The district court granted defendants' motion for summary judgment. On the defendant's motion the court also sanctioned Watson one dollar under Rule 11 for allowing someone else to sign his name on his complaint and for failing to sign his interrogatories. Watson appeals.
 
 ANALYSIS
 
 9
 Watson contends that the district court erred in granting summary judgment to the defendants. We review a grant of summary judgment de novo. Santella v. City of Chicago, 936 F.2d 328 (7th Cir.1991). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex v. Catrett, 106 S.Ct. 2548 (1986).
 
 
 10
 Watson appeals his claims against the defendants in their individual capacities. In order to survive summary judgment, Watson had to present evidence tending to show that the defendants personally caused him a constitutional deprivation. Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir.1991) (citing Kentucky v. Graham, 473 U.S. 159 (1985).
 
 
 11
 In support of his Eighth Amendment claims, Watson had to show that the defendants exhibited "deliberate indifference" towards Watson's safety. Estelle v. Gamble, 429 U.S. 97, 105 (1976). The Eighth Amendment contains an element of intent. Wilson v. Seiter, 111 S.Ct. 2321 (1991). A complainant must show intentional or willful disregard for a prisoner's safety before conduct (or lack of conduct) amounts to cruel and unusual punishment. See McGill v. Duckworth, 944 F.2d 344 (7th Cir.1991), cert. den., 112 S.Ct. 1265 (1992).
 
 
 12
 Failure to protect from the September 7 attack
 
 
 13
 Watson argues that because he had notified prison officials of Smith's threats before being attacked, the officials should have protected him more effectively. He also argues that officials knew Smith was capable of carrying out his threats because Smith had a prior history of violent acts in the prison.
 
 
 14
 Before the attack, only Semler and Plank knew of Smith's threats. The undisputed facts show that Semler did what he thought was necessary to prevent the attack: he spoke to Smith. Having no prior knowledge of Smith's record, Semler did not believe that Watson was in danger of physical assault. The facts also reveal that Watson did not seek protective custody, indicating that Watson did not disclose the seriousness of the threats. Watson did not show that Semler knew Watson was in actual danger and deliberately failed to take measures to protect him. See McGill, 944 F.2d 344; Duckworth v. Franzen, 780 F.2d 645 (7th Cir.1985).
 
 
 15
 It is arguable whether Semler should have asked Watson to assist him a second time in removing a mattress from Smith's cell, but Semler's actions did not demonstrate total disregard for Watson's safety. Watson had to show a "conscious culpable refusal to prevent harm" on the part of Semler in order to support his Eighth Amendment claim. Duckworth v. Franzen 780 F.2d 645, 653 (7th Cir.1985), cert. denied, 479 U.S. 816 (1986). Bad judgment is not the equivalent of intentional conduct. Even gross negligence does not support an Eighth Amendment claim. Id.
 
 
 16
 Plank did not demonstrate "deliberate indifference" towards Watson either. Plank learned of Smith's threats after Semler spoke with Smith. At that time, Semler believed that he had diffused the situation. Watson did not request protective custody. Furthermore, Plank stated he did not know Smith was a violent inmate. Thus, there is nothing in the record indicating that Plank knew or should have known of impending harm to Watson.
 
 
 17
 As for the other defendants, while some were familiar with Smith's prison record, no one else knew that Smith had threatened Watson until after the attack. Because Watson could not show that anyone but Semler and Plank knew Smith had threatened Watson, Watson cannot hold the other defendants individually responsible.
 
 
 18
 Failure to take appropriate measures after the attack
 
 
 19
 Watson claims that the defendants violated his rights by not allowing him to transfer to the Indiana Youth Center after the attack. Inmates do not have a right to be incarcerated in the facility of their choosing. Meachum v. Fano, 427 U.S. 215 (1976).
 
 
 20
 Watson argues that by leaving him in the Indiana Reformatory, the prison officials disregarded his safety, but he failed to show that they were indifferent to his plight. See McGill, 944 F.2d 344. The undisputed facts reveal that prison authorities had discussed other alternatives with Watson in an effort to remove him from danger. Watson refused offers of protective custody and turned down the opportunity to be transferred to other facilities. Watson would accept only a transfer to the Indiana Youth Center, and that option was not available.
 
 Conspiracy to withhold information
 
 21
 The district court was correct in finding that there was no evidence to support Watson's claim that officials covered up the facts surrounding the denial of his transfer to the Indiana Youth Center. Not only did Watson fail to present evidence in support of his claim, he also failed to establish the existence of a constitutional deprivation. Because Watson has no right to select a prison facility, his allegation does not support a claim for constitutional deprivation.
 
 Rule 11 Sanctions
 
 22
 The district court sanctioned Watson under Rule 11 because he allegedly allowed someone else to sign his name to the complaint and failed to sign the interrogatories served on the defendants. The standard of review for Rule 11 sanctions is abuse of discretion. Cooter & Gell v. Hartmarx Corp., 110 S.Ct. 2447 (1990). In this case Watson committed no violation of Rule 11 and the court abused its discretion by sanctioning him.
 
 
 23
 An unsigned pleading may be stricken. Fed.R.Civ.P. 11. The defendants' remedy for an alleged improper signature would have been dismissal of the complaint. Furthermore, anything signed by an authorized agent of Watson is as if he himself signed it within the meaning of Rule 11. Robinson v. City of Chicago, 868 F.2d 959, 969 n. 2 (7th Cir.1989). Watson treated the complaint as if he had personally signed it.
 
 
 24
 Rule 11 sanctions do not apply to interrogatories. Interrogatories are not "papers filed with the court" under Rule 11; interrogatories are discovery requests governed by Rule 26(g). Fed.R.Civ.P. 26(g). Unsigned discovery requests may also be stricken. Id. If the defendants received interrogatories from Watson which did not bear his signature, they had no duty to respond.
 
 CONCLUSION
 
 25
 For the foregoing reasons, summary judgment is AFFIRMED and the Rule 11 sanctions are REVERSED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs