CRAWFORD, Chief Judge
(dissenting):
There is a significant difference between punishment inflicted by a prison official, and independent criminal acts committed by one rogue prison guard. Appellant was a victim of the latter. The offending guard in this case — 1st Class Petty Officer (E-6) — committed a criminal act of his own volition, which the prison’s supervising official, a commissioned officer (0-4), handled appropriately. Upon learning of the guard’s misconduct through Appellant’s complaint, the supervising official immediately initiated a criminal investigation, during which the Criminal Investigation Command (CID) titled the guard for indecently assaulting Appellant and at least several others. This prompt and reasonable response on the part of the Major Lynch should be the focus of this Court’s analysis, and not the independent criminal actions of one rogue prison guard. It is on these grounds that I respectfully dissent.
“Generally, this Court looks to federal case law interpreting the Eighth Amendment to decide claims of an Article 55 violation.” United States v. Smith, 56 M.J. 290, 292 (C.A.A.F.2002)(citing United States v. Avila, *356 53 M.J. 99, 101 (C.A.A.F.2000)). Accordingly, I consider Appellant’s “claims of an Eighth Amendment violation and Article 55 violation together.” Id.
The Supreme Court has been clear that “[t]he Eighth Amendment does not outlaw cruel and unusual ‘conditions’; it outlaws cruel and unusual ‘punishments.’ ” Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). “ ‘The infliction of punishment is a deliberate act intended to chastise or deter.’ ” Wilson v. Seiter, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)(quoting Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir.1985)). Accordingly, “[t]he thread common to all [Eighth Amendment prison cases] is that ‘punishment’ has been deliberately administered for a penal or disciplinary purpose.” Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir.1973)).
' The record does not in any way suggest that the guard sexually harassed Appellant “for a penal or disciplinary purpose.” On the contrary, Appellant’s affidavit suggests that the guard attempted to manipulate Appellant in an effort to satisfy his own sexual desires. While no doubt intolerable, the guard’s actions were not “punishment” for Eighth Amendment purposes; they were independent criminal acts. Thus, my analysis focuses on the responsive actions of the prison’s supervising official, and not the independent criminal acts of one rogue guard.[1]
The question of cruel and unusual punishment under the Eighth Amendment “is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial ‘risk of serious damage to his future health.’ ” Farmer, 511 U.S. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). Thus, to succeed in an Eighth Amendment claim, a prisoner must establish not only the seriousness of the offending acts — by demonstrating exposure to a substantial risk of serious damage — but also the offender’s culpable mental state of deliberate indifference.[2] Id. at 835; see also Hope v. Pelzer, 536 U.S. 730, 737-38, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (reiterating that in evaluating an Eighth Amendment claim courts must ascertain whether the officials involved acted with deliberate indifference); Wilson, 501 U.S. at 297 (noting that a prisoner advancing an Eighth Amendment claim must at minimum allege deliberate indifference to his serious medical needs); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(eoncluding that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment).
An official acts with deliberate indifference only if “the official knows of and disregards an excessive risk to inmate health or safety.” Farmer, 511 U.S. at 837 (emphasis added). For that reason, “prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.” Id. at 844 (emphasis added). In short, deliberate indifference requires, first, knowledge of a serious risk posed to inmate health or safety, and, second, failure to respond reasonably to that risk.
In evaluating the reasonableness of a response, we bear in mind that officials “should be accorded wide-ranging deference in the *357 adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.” Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(citing Jones v. North Carolina Prisoners’ Labor Union, 433 U.S. 119, 128, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Procunier v. Martinez, 416 U.S. 396, 404-05, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); Cruz v. Beto, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)). This is because “maintaining security and order and operating the institution in a manageable fashion” are considerations “ ‘peculiarly within the province and professional expertise of corrections officials’.” Id. at 540-41 n. 23 (quoting Pell v. Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)).
Appellant filed a sworn statement with the commander of her confinement facility, describing the abusive conduct of one rogue guard. This statement prompted him to initiate an official criminal investigation, during which the CID interviewed Appellant, as well as other female inmates and prison guards. These interviews identified both current and former inmates, as well as a female prison guard, who had been indecently assaulted and/or sexually harassed by the rogue guard. In addition to describing the acts allegedly committed by him and acknowledging other potential victims, the CID’s initial report requested a name check on the guard and indicated that the investigation would continue. In short, once the supervising prison official knew of the risk posed by the guard, he responded reasonably to it, by launching a thorough criminal investigation closely linked to Appellant and the specific allegations in her sworn statement. See Jackson v. Everett, 140 F.3d 1149, 1152-53 (8th Cir.1998)(finding official’s investigation of inmate’s allegations a response sufficiently reasonable to obviate deliberate indifference).
In sum, the guard allegedly engaged in independent criminal acts that threatened inmate health and safety. Upon learning of these acts, the supervising prison official responded in a manner aimed to examine and eliminate the threat. Given the clear absence of deliberate indifference on the part of the supervising official, I respectfully dissent from the lead opinion.

. Moreover, the ultimate outcome of the CID investigation is not apparent from the record. There is certainly no indication in the record that the guard eventually received punishment — either administratively or through a court-martial — for his alleged acts. In the absence of evidence to this effect, we cannot assume the veracity of Appellant’s affidavit, and must accept the possibility that the acts described in the affidavit may not have occurred. For this reason, focusing on the established responsive acts of the supervising official, rather than the alleged acts of the guard, is even more appropriate.

. Although I employ the deliberate indifference standard in my analysis in accordance with federal precedent, it is worth noting that the standard has been academically criticized as overly stringent. See, e.g., Michael Cameron Friedman, Special Project: Cruel and Unusual Punishment in the Provision of Prison Medical Care: Challenging the Deliberate Indifference Standard, 45 Vand. L.Rev. 921 (1992)(arguing that the intent component of the deliberate indifference standard should be eliminated).