**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3953
_____

ORLANDO BAEZ,
                                        Appellant

v.

MEDICAL DOCTOR STANLEY FALOR, MR., DR., MED. Dir., ET AL;
DIANE MANSON, MRS., C.H.C.A., Superv;
SHIRLEY HICKMAN, MS., RNS., PHYS.; MICHELLE DIGGS;
UNBANTI TALABI, MRS., DR., PHYS.; LOUIS FOLINO, MR., Superint;
SHARON BURKS, MRS., Chief. Griev/Appeals Officer;
BYUNGHAK JIN, MR., DR. PHYS.;
DEBRA GRESS, MRS., RNS. PAC;
PRISON HEALTH SERVICES, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 09-cv-01149)
District Judge:  Honorable Terrence F. McVerry
_____

Argued:  April 8, 2014
_____

Before: HARDIMAN, SHWARTZ and BARRY, <u>Circuit Judges</u>

(Opinion Filed: May 8, 2014)
_____

Shannon Farley (Argued)
Daniel Pereira (Argued)
Richard H. Frankel, Esq., Associate Professor of Law and Director,
Appellate Litigation Clinic, Drexel University
Earle Mack School of Law

3320 Market Street
Philadelphia, PA 19104
*Counsel for Appellant*

Alan S. Gold, Esq. (Argued)
Gold & Ferrante
261 Old York Road
Suite 526
Jenkintown, PA 19046-0000
*Counsel for Appellees*

_____

OPINION
_____

BARRY, Circuit Judge

Orlando Baez, an inmate in state prison in Pennsylvania, filed this action under 42 U.S.C. § 1983 alleging that Prison Health Services ("PHS") and various prison officials acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, and unlawfully retaliated against him for filing complaints, grievances, and sick call requests. The District Court, in an extraordinarily thorough and well reasoned opinion, granted summary judgment in favor of defendants. We will affirm.

I.

Baez has been incarcerated at SCI-Greene since April 2005. While at SCI-Greene, Baez has submitted many hundreds of sick call slips, request slips, and grievances related to his various medical complaints, including his complaints of chronic abdominal and chest pain, skin rashes and sores, neck, back, joint, and kidney pain, dry eyes and mouth,

rectal bleeding, wrist abrasions, and other problems. In its 93-page opinion on defendants' motion for summary judgment, the District Court exhaustively set forth a 45-page summary of the medical attention and treatment that Baez received at SCI-Greene from April 2005 to July 2012. Because our own summary of Baez's medical history and treatment would add little value, given the District Court's careful and detailed recitation of the facts, and because we write primarily for the parties, we need not revisit those facts here except as necessary to provide some context for our decision.

Baez alleges that PHS and various medical officials at SCI-Greene acted with deliberate indifference to his serious medical needs when they failed to adequately diagnose and treat him for lupus, a chronic inflammatory disease. In June 2006, after two lab tests returned positive for a possible diagnosis of lupus, prison medical officials arranged for Baez to have an outside consultation with rheumatologist Dr. David Seaman. Dr. Seaman indicated that he "doubt[ed]" that Baez had systemic lupus but ordered various testing to rule it out. (App. 764.) He ordered lab tests, x-rays, and a CT scan of Baez's abdomen, and recommended that Baez return for a follow-up visit in one month.

The one-month follow-up appointment with Dr. Seaman was scheduled but then cancelled due to Baez's refusal to sign a consent form for the CT scan. The CT scan was ultimately performed on November 8, 2006, and the results were normal. Thereafter, the follow-up appointment with Dr. Seaman was not promptly re-scheduled by prison officials. The medical records are silent as to the reason why the appointment was not re-scheduled after the CT scan.

3

In April 2008, seventeen months later, Dr. Byunghak Jin, Medical Director of SCI-Greene, scheduled a follow-up visit for Baez with Dr. Seaman. Again, Dr. Seaman did not diagnose Baez with lupus, nor did he prescribe any lupus-specific medications. In January 2009, Dr. Jin contacted Dr. Seaman to determine if he had any further recommendations for Baez, and Dr. Seaman recommended referring Baez for a second opinion at the Lupus Center of Excellence at the University of Pittsburgh. Baez was taken to the Lupus Center in February 2009, where doctors diagnosed him with lupus. Since 2009, Baez has been under the care of doctors at the Lupus Center.

Baez initiated this civil action on November 7, 2006 in the U.S. District Court for the Eastern District of Pennsylvania, alleging violations of his constitutional rights based on the medical treatment he received at both SCI-Greene and SCI-Graterford, where he was housed prior to April 2005. In 2009, Baez's claims against the SCI-Greene defendants were transferred to the U.S. District Court for the Western District of Pennsylvania. On September 24, 2012, the District Court granted summary judgment in favor of the SCI-Greene defendants.[1]

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's decision to grant summary judgment. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580 (3d Cir. 2003). Summary judgment is proper

---

[1] Two defendants, Louis Folino and Sharon Burks, were dismissed from the case on November 8, 2011 when the District Court granted their motion for judgment on the pleadings. Baez failed to appeal this order; therefore, we need not address it.

where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." Natale, 318 F.3d at 580.

The District Court found Baez's contentions that defendants denied him medical care and treatment and avoided diagnosing his condition "to be rebutted by the record," noting the numerous instances in which Baez received medical attention and the many tests that were performed and medications that were prescribed in attempts to treat his complaints. (App. 60.) We agree. As the District Court aptly observed: "Although Plaintiff styles his claim as a 'denial' of medical treatment, it is clear from his submissions that he is actually challenging the adequacy, appropriateness, and effectiveness of the treatment he received. Despite his pleas to the contrary, this is a classic case whereby Plaintiff disagrees with the medical treatment rendered." (App. 61-62.)

On appeal and at oral argument, Baez focused on the seventeen-month delay in scheduling a follow-up appointment with Dr. Seaman after the CT scan, arguing that one could infer, from the lack of a contemporaneously documented medical reason for not scheduling the appointment, and various other "facts," that Dr. Jin acted with deliberate indifference to Baez's serious medical needs when he failed to timely re-schedule this appointment. Deliberate indifference, however, is an exceedingly high standard. A

5

prison official violates the Eighth Amendment only when a deprivation is "sufficiently serious," that is, where the official's act or omission "result[s] in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted). In addition, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," the official must have a "sufficiently culpable state of mind." Id. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks omitted)). As we have held, deliberate indifference "requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (internal quotation marks and citation omitted). Here, even drawing all inferences in favor of Baez, as we must, we cannot conclude that there is a genuine issue of material fact for trial as to whether Dr. Jin acted with deliberate indifference. Moreover, we note that although our record on appeal, which spans over 3000 pages, contains hundreds of grievances and complaints filed by Baez, the record does not indicate that Baez ever made any request to be sent back to Dr. Seaman after the CT scan.

We have carefully reviewed Baez's other claims, including his claims against the other medical defendants, his retaliation claim, and his claim against PHS, and we are in agreement with the District Court that no genuine issue of material fact exists to preclude summary judgment in favor of defendants on any of Baez's claims.

6

III.

For the foregoing reasons, we will affirm the judgment of the District Court.