# SUPREME COURT OF THE UNITED STATES

MICHAEL JOHNSON *v.* SUSAN PRENTICE, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 22–693.　Decided November 13, 2023

The petition for a writ of certiorari is denied.

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR and
JUSTICE KAGAN join, dissenting from the denial of certiorari.

This Court has long held that the test for evaluating an
Eighth Amendment challenge to a prisoner's conditions of
confinement involves determining whether prison officials
acted with "deliberate indifference" to a substantial risk to
an inmate's health or safety. *Estelle* v. *Gamble*, 429 U. S.
97, 104 (1976). With respect to the Eighth Amendment
claim at issue in this case, the Court of Appeals for the Seventh Circuit affirmed the grant of summary judgment to
prison officials without applying that well-established
standard. Given this indisputable legal error, I would grant
certiorari and summarily reverse.

## I

### A

For nearly three years, petitioner Michael Johnson—
whom the Illinois Department of Corrections has classified
as "seriously mentally ill" based on his bipolar disorder, severe depression, and other diagnosed conditions—was held
in solitary confinement at Pontiac Correctional Center, a
prison two hours from Chicago. During that time, Johnson
spent nearly every hour of his existence in a windowless,
perpetually lit cell about the size of a parking space. His
cell was poorly ventilated, resulting in unbearable heat and
noxious odors. The space was also unsanitary, often caked
with human waste. And because Pontiac officials would not

provide cleaning supplies to Johnson unless he purchased them from the commissary, he was frequently forced to clean that filth with his bare hands. Johnson was allowed out of his cell to shower only once per week, for 10 brief minutes.

As Members of this Court have recognized, the practice of solitary confinement "exact[s] a terrible price." *Davis* v. *Ayala*, 576 U. S. 257, 289 (2015) (Kennedy, J., concurring); see also *Apodaca* v. *Raemisch*, 586 U. S. ___, ___–___ (2018) (statement of SOTOMAYOR, J., respecting denial of certiorari) (slip op., at 6–7); *Ruiz* v. *Texas,* 580 U. S. 1191, 1192 (2017) (Breyer, J., dissenting from denial of stay of execution). Indeed, "serious objections" to this form of imprisonment have been brought to this Court for more than a century. *In re Medley*, 134 U. S. 160, 168 (1890). In this regard, Johnson's case is not unusual.

But Johnson's solitary confinement was unusually severe in another respect. In addition to the typical hardships associated with solitary confinement, prison officials completely deprived Johnson of exercise for nearly all of his incarceration at Pontiac. In the ordinary course, even when in solitary confinement, Pontiac inmates are permitted to have recreation time in the prison yard for at least eight hours per week. See Ill. Admin. Code, tit. 20, §504.670 (2023). While in the yard, inmates can access a caged outdoor exercise area that has some basic exercise equipment and enough open space in which to move about.

In Johnson's case, however, Pontiac officials refused to provide even this modest relief. Rather, Johnson was repeatedly placed under so-called "yard restrictions" as punishment for various infractions, most of them minor, which resulted in the denial of any access to recreation outside his cell. Each yard restriction was imposed for a period of between 30 and 90 days, but the restrictions were stacked such that, in total, Johnson received over three years' worth of yard restrictions. The cramped confines of Johnson's cell

prevented him from exercising there. Thus, for three years, Johnson had no opportunity at all to stretch his limbs or breathe fresh air.[1]

The consequences of such a prolonged period of exercise deprivation were predictably severe. Most notably, Johnson's mental state deteriorated rapidly. He suffered from hallucinations, excoriated his own flesh, urinated and defecated on himself, and smeared feces all over his body and cell. Johnson became suicidal and sometimes engaged in misconduct with the hope that prison guards would beat him to death. His muscles also became prone to spasms and cramping, and he often complained of overwhelming fatigue. He developed respiratory difficulties, including painful chest contractions and nosebleeds. Worse still, Johnson's dire physical condition led to further yard restrictions, as prison guards faulted him for being disruptive and having an unclean cell. This vicious cycle continued month after month until Johnson was transferred to a specialized mental-health treatment unit, where his condition improved.

### B

Just before his transfer, Johnson filed a lawsuit in the Northern District of Illinois against the Pontiac officials who had deprived him of exercise. Proceeding *pro se* under Rev. Stat. §1979, 42 U. S. C. §1983, Johnson made various

———————

[1] It appears that Johnson received 16 yard-restriction sanctions beginning in January 2013 and that 10 of those restrictions were imposed for some variation of "insolence," "damage or misuse of property," or "disobeying a direct order." 3 App. in No. 18–3535 (CA7), pp. 575–578 (alterations omitted). Only four—three of which involved spitting on another inmate, and one that involved throwing liquid at prison staff—could be characterized as involving any violence. See *id.,* at 576–578. Nor did any of these infractions involve misconduct that occurred in the yard. Thus, as one judge noted below, "[m]any, if not most, of the disciplinary infractions in this case [did] not signify any acute security risk." 29 F. 4th 895, 913–914 (CA7 2022) (Rovner, J., dissenting).

Eighth Amendment claims, and also repeatedly pleaded for the District Court to appoint him an attorney, noting that his mental state made it difficult for him to litigate his case. His pleas were refused, and Johnson litigated the case on his own. After the prison officials moved for summary judgment, Johnson mustered only a partially completed, handwritten opposition brief, which ended with the statement "I could not finish." 3 App. in No. 18–3535 (CA7), p. 742. The District Court granted summary judgment to the Pontiac officials.

Over Judge Rovner's dissent, the Seventh Circuit affirmed. As relevant here, the panel pointed to *Pearson* v. *Ramos*, 237 F. 3d 881 (CA7 2001), and restated the two-part holding of that Circuit precedent: (1) that a single "90-day period of no yard privileges as a sanction for misconduct does not inflict cruel and unusual punishment on an inmate in segregation," and (2) that "imposing consecutive 90-day periods of no-yard privileges for separate misconduct violations does not violate the Eighth Amendment unless the sanctions were meted out for 'some utterly trivial infraction of the prison's disciplinary rules.'" 29 F. 4th 895, 904 (2022) (quoting *Pearson*, 237 F. 3d, at 884–885). Applying that legal standard to the facts presented in Johnson's case, the panel reasoned that, while "Johnson's cumulative yard restrictions were far longer" than the total one year of yard restrictions imposed in *Pearson*, Johnson did not, and could not, argue "that his misconduct was trivial, either individually or in the aggregate," and thus "[s]ummary judgment for the defendants on this [Eighth Amendment] claim was appropriate." 29 F. 4th, at 904–905.

With five judges dissenting, the entire Court of Appeals subsequently denied Johnson's petition for rehearing en banc, rejecting his request that *Pearson*'s "utterly trivial infraction" rule be revisited and revised. 47 F. 4th 529 (CA7 2022). Concurring in the rehearing denial, Judge Scudder characterized Johnson's case as presenting a "difficult"

question that *Pearson* had not adequately addressed insofar as *Pearson* suggested "that the proper Eighth Amendment focus is not on the cumulative effect of disciplinary infractions . . . but rather on whether each individual instance of misconduct warranted denying that access for some lesser increment of time." 47 F. 4th, at 530. Judge Scudder recognized that *Pearson*'s rule was "at odds with the established preference of resolving Eighth Amendment challenges to prison conditions on their individual facts with legal guideposts informing the proper inquiry," and thus he indicated that "[re]consideration in a future case" was warranted. 47 F. 4th, at 530 (citing *Farmer* v. *Brennan*, 511 U. S. 825 (1994)). But, in Judge Scudder's view, Johnson's case was not the appropriate vehicle to reassess "the right legal standard," because Johnson's *pro se* status had led to a record that was "underdeveloped on points of fact and law." 47 F. 4th, at 529–530.

## II

The "right legal standard" for evaluating Johnson's Eighth Amendment no-yard-access claim is well established. As this Court has long explained, the Eighth Amendment prohibits conditions of confinement that are attributable to a prison official's "deliberate indifference" to an inmate's health or safety, *Estelle*, 429 U. S., at 104, for in such cases, it can be fairly said that "the official has inflicted cruel and unusual punishment," *Wilson* v. *Seiter*, 501 U. S. 294, 299 (1991). We have also clarified the meaning of deliberate indifference, noting that any prison official who "knows of and disregards an excessive risk to inmate health or safety" has violated the constitutional rights of an inmate who is harmed by that condition. *Farmer*, 511 U. S., at 837. And we have further specified that, in order for a prison official to be liable for unconstitutional deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference." *Ibid.*

In the cumulative no-yard-access context, then, proper application of the deliberate-indifference standard when evaluating a prison official's motion for summary judgment requires consideration of two factbound factors: first, whether the exercise deprivation at issue posed a substantial risk to the prisoner's health or safety, and second, whether prison officials "knowingly and unreasonably disregard[ed]" that risk of harm. *Id.*, at 845–846. In other words, the focus of the correct assessment is on the evidence concerning the risks presented to the inmate and the prison officials' knowledge of and response to those risks. And for summary judgment to be properly awarded to prison-official defendants, there cannot be any genuine dispute about the insufficiency of the prisoner's showing related to the risks posed by the complained-of condition or the official's knowing and deliberate disregard of them. See *id.*, at 846.

*Pearson*'s "utterly trivial infraction" test bears no relationship to this legal standard. As noted above, its entire focus is on the reasons the officials imposed the yard restrictions, presumably based on the mistaken view that the Eighth Amendment analysis turns only on a prison official's rationale for imposing the purportedly inhumane condition. The *Pearson* rule pays no attention whatsoever to the indisputable risks to health or safety that a prolonged period of exercise deprivation can cause.[2] Moreover, *Pearson*'s conclusion that the way to evaluate a prisoner's complaint

——————

[2] Respondents do not contest that a 3-year deprivation of exercise might implicate the Eighth Amendment insofar as it poses a substantial risk to an inmate's health or safety. Nor could they. This Court has already determined that "deprivation of a single, identifiable human need such as . . . exercise" can "establish an Eighth Amendment violation." *Wilson* v. *Seiter*, 501 U. S. 294, 304 (1991); see also *Apodaca* v. *Raemisch*, 586 U. S. ___, ___ (2018) (statement of SOTOMAYOR, J., respecting denial of certiorari) (slip op., at 5) ("[T]o deprive a prisoner of any

about yard restrictions that cumulatively deprive him of exercise—by disaggregating the stacked penalties and examining each one for its unreasonableness relative to what the prisoner has done to warrant that restriction—is plainly contrary to the thrust of a legal standard that requires consideration of "the sum total of the deprivation," as Judge Scudder rightly observed. 47 F. 4th, at 530 (quoting *Wilson*, 501 U. S., at 304, for the proposition that "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone" (emphasis deleted; internal quotation marks omitted)).

The facts and circumstances here further indicate that the Seventh Circuit's erroneous application of the *Pearson* test in lieu of the deliberate-indifference standard was not a harmless error in the context of Johnson's case. The Court of Appeals rejected Johnson's claim by focusing only on the nature and volume of Johnson's infractions. See 29 F. 4th, at 904–905. It did not consider the impact of cumulative exercise deprivation on Johnson's physical and mental health, or what was known to prison officials about the risks of such deprivation. And there was more than enough evidence to support a reasonable jury finding that the overall 3-year deprivation of yard time that Johnson was subjected to was the result of unconstitutional deliberate indifference. The record includes, for example, evidence of Johnson's attempts to notify prison staff of the dire impacts that the yard restrictions had on his health. See, *e.g.,* 1

_____

outdoor exercise for an extended period of time in the absence of an especially strong basis for doing so is deeply troubling—and has been recognized as such for many years"). And while the Constitution "does not mandate comfortable prisons," *Rhodes* v. *Chapman*, 452 U. S. 337, 349 (1981), it is clear beyond cavil that the Eighth Amendment does require "that inmates be furnished with the basic human needs," *Helling* v. *McKinney*, 509 U. S. 25, 33 (1993); see also *Youngberg* v. *Romeo*, 457 U. S. 307, 315 (1982); *DeShaney* v. *Winnebago County Dept. of Social Servs.*, 489 U. S. 189, 200 (1989).

App. in No. 18–3535 (CA7), at 30 (writing in a prison griev-
ance form: "I am in a cell 24 hours a day, 7 days a week. I
am not allowed to go out of my cell for anything except
showers once a week. . . . Due to me not being allowed to
have outdoor exercise I . . . continuously am being injured
physically [and] psychologically").[3]

  In short, rather than faulting Johnson for failing to pre-
sent arguments or evidence that established the "trivial"
nature of the behavioral infractions that precipitated the
cumulative yard restrictions, the Seventh Circuit should
have abandoned *Pearson*'s "utterly trivial infraction" rule
and applied the well-established deliberate-indifference
standard to analyze the state of the evidence concerning
Johnson's Eighth Amendment cumulative no-yard-access
claim. If it had done so, the Circuit panel would have had
to acknowledge that, at the very least, the deliberate-indif-
ference inquiry presents a genuine issue of material fact for
the jury, under the facts and circumstances presented here,
such that summary judgment was not appropriate.

---

  [3] Other evidence confirms that Pontiac officials were aware of John-
son's suffering. For example, one mental-health professional at Pontiac
reported that Johnson was "hyperactive," and that while "on yard re-
striction" he had "no outlet for his mania." 2 App. in No. 18–3535 (CA7),
at 295. By that Pontiac professional's own account, Johnson was "re-
stricted in his basic need[s] due to being indigent/manic." *Ibid.*