RENDERED:  APRIL 3, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1200-MR

TAYNANDREE REED                                                                     APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 24-CI-00383

VESNA MANDIC, UNKNOWN
TITLE; COOKIE CREWS, IN HER
OFFICIAL CAPACITY AS
COMMISSIONER OF THE
KENTUCKY DEPARTMENT OF
CORRECTIONS; DAWN
PATTERSON, REGIONAL
MANAGER; DENISE BURKETT,
APRN; DEPARTMENT OF
CORRECTIONS; JENNIFER
BLANTON, AHSA; WELLPATH,
INMATE HEALTH CARE SUPPLIER;
AND WILLIAM GRENIER,
ORDERING PROVIDER                                                                   APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE:  Taynandree Reed ("Reed"), *pro se*, appeals from an order of the Franklin Circuit Court granting the motion of the Kentucky Department of Corrections ("KDOC"); KDOC Commissioner Cookie Crews, and KDOC employee Denise Burkett (collectively "Corrections") to dismiss Reed's petition for declaratory judgment for failing to exhaust his administrative remedies.  After careful review, we affirm.

## BACKGROUND

Reed, currently an inmate at the Southeast State Correctional Complex ("SSCC") in Wheelwright, Kentucky, initiated this action by filing a petition for declaratory judgment ("the Petition") in Franklin Circuit Court.  In addition to the Corrections parties, Reed's Petition named as Respondents Wellpath, LLC, a prison healthcare provider; and four persons presumed to be Wellpath employees, Vesna Mandic; Dawn Patterson; Jennifer Blanton; and William Grenier.[1]

The Petition alleged that Reed had signed a refusal to be tested for HIV during intake while he was an inmate at the Roederer Correctional Complex ("Roederer") in LaGrange, Kentucky.  The Petition alleged that, despite Reed's

---

[1] Wellpath and the four persons presumed to be Wellpath employees were not parties to the motion to dismiss and had not filed a responsive pleading prior to the Franklin Circuit Court's dismissal of the action.

-2-

written refusal, HIV testing had nonetheless occurred among lab work that occurred upon a subsequent blood draw at Roederer.

The Petition indicated Reed was initiating the action pursuant to KRS[2] 418.040. There, Reed alleged that he had been "denied his protected state, federal, and United States Constitutional rights when his blood was drawn for HIV testing without his consent." Record on Appeal, ("R."), p. 15. The Petition also alleged that Reed was "denied state, federal, and United States Constitutional rights when Wellpath . . . employed staff that do not take the time to look through Petitioner's file when ordering laboratory testing." R. at 16.

Other allegations in the Petition did not directly concern any health care services at Roederer. These focused upon the handling of a health care grievance filed about the HIV testing. The Petition alleged that Reed was "denied state, federal, and United States Constitutional rights when Respondents attempted to deny [Reed] his right to the Grievance process[,]" as well as when Roederer had "refused to respond to his grievance[.]" R. at 15, 16.

The Petition sought injunctive relief from the medical staff. Additionally, the Petition requested compensatory damages in an amount to be determined by the court and $2,500,000 in punitive damages.

---

[2] Kentucky Revised Statutes.

Reed's Petition contended he had filed Grievance 23-297 after his receipt of medical records which documented an HIV lab test on bloodwork drawn during intake at Roederer. Prior to filing the grievance, it is apparent that Reed had been transferred from Roederer to Eastern Kentucky Correctional Complex ("EKCC") in West Liberty, Kentucky. Furthermore, his Petition makes apparent that Reed filed Grievance 23-297 with EKCC. Documentation attached to Reed's Petition reflects that Grievance 23-297 was classified as a "Health Care Grievance" as the subject matter concerned "Medical Services" and the "Quality of Health Care[.]" R. at 25.

Attached to Reed's Petition was a form Reed had filled out to initiate Grievance 23-297. In a section of the form titled "Brief Statement of the Problem[,]" Reed wrote that he had:

> noticed I was tested for HIV even though I have a copy of a refusal form I signed and dated not to be tested for HIV. I spoke with the sick call nurse about this and she couldn't give me an explanation. Her only advice was file a grievance about it.

R. at 26.

Later in the same form, Reed indicated the "Action Requested" in response to his grievance was to learn "why against my authorization was my blood used and tested for HIV when I clearly signed a refusal form." R. at 26.

The bottom portion of the same form contained a section labeled "Informal Resolution Stage" that was completed by staff. There, Jennifer Blanton, the Assistant Health Services Administrator for EKCC, documented an in-person meeting with Reed to address his health care grievance. Her notation indicates she initially informed Reed that, as Grievance 23-297 concerned a procedure that had occurred at Roederer, EKCC was unable to respond and the grievance should instead be sent to Roederer. Additional correspondence Reed received from Blanton, dated contemporaneously with the informal resolution, was described in and attached to the Petition. There, Blanton indicated she would advise a grievance coordinator that Roederer would need to respond to Reed's grievance.

The Petition attached an appeal form Reed submitted to appeal the informal resolution to the Health Care Grievance Committee. Reed asserted he wished to appeal because:

> [t]he informal resolution didn't give me an answer of 'why' these actions were taken against me. I feel nothing was accomplished in the informal resolution and for that I wish to appeal the decision and go to the committee.

R. at 12.

The Petition alleged Reed received a response to his appeal from Dawn Patterson on behalf of the Health Care Grievance Committee. The Petition contended that on August 8, 2023, the Health Care Grievance Committee rendered a decision of concurrence with the informal resolution. The Petition asserted that

-5-

the decision expressed specific agreement that Reed's grievance should be addressed by Roederer.

Per his Petition, Reed then appealed the decision of the Health Care Grievance Committee to Denise Burkett, the Medical Director for KDOC. The Petition indicated that on October 5, 2023, Burkett rendered a decision of concurrence with the Health Care Grievance Committee. Additionally, the Petition contended, Burkett's decision contained the following findings and conclusions:

> Appears the refusal was signed on 12/21/2022. On 12/22/2022 the Medical Provider ordered routine intake lab and apparently wasn't aware of the refusal. When the lab was drawn, 1/10/23, I don't think V. Mandic was aware of the refusal either. I apologize for this error. I will have HSA McDonald to educate staff to make sure a consent or refusal is looked for before drawing such labs.

R. at 13.

Burkett's decision was the final action taken in the procedural course of Grievance 23-297 alleged in Reed's Petition. However, aside from the allegations related to bloodwork that occurred while he was an inmate at Roederer, the Petition contained additional allegations that Reed "became aware that Grievance (23-297) was being hindered by an unknown source" during his pursuit of administrative relief after his transfer from Roederer and, later, from EKCC. R. at 13. The Petition alleged that, despite indications from Reed that Grievance 23-297 would eventually be addressed by Roederer, this did not occur.

-6-

The Petition referenced correspondence that Reed allegedly sent to Kentucky Department of Corrections Ombudsman, Allyson Lambert, to voice complaints about hinderance in the processing of his grievance. Reed attached responsive correspondence from Lambert to his Petition dated August 28, 2023. In that correspondence, Lambert acknowledged her receipt of a letter in which Reed complained that "grievance 23-297, from EKCC[,] has not been allowed to proceed through the process to the health care administrator." R. at 35. Lambert further advised that:

> after further consultation with the grievance coordinator from EKCC and the grievance coordinator at SSCC you will be allowed to appeal your grievance to the health care administrator. As soon as the grievance coordinator at SSCC has retained a copy of the grievance from EKCC they will let you know how to proceed.

*Id.*

After Reed had filed his Petition with the circuit court, Corrections filed a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to CR[3] 12.02(f) and for failure to exhaust administrative remedies pursuant to KRS 454.415. Therein, Corrections argued that the "threshold issue of the requirement that inmates exhaust their administrative remedies prior to filing

---

[3] Kentucky Rules of Civil Procedure.

suit and that they attach documents demonstrating that exhaustion necessitate[d] dismissal of Reed's Petition."  R. at 48.

The motion to dismiss conceded that Reed had attached *portions* of Grievance No. 23-297 to his Petition but that the attachments were fatally incomplete.  Specifically, Corrections contended Reed had failed to attach documentation of the decisions of the Health Care Grievance Committee and Medical Director as to Reed's administrative appeals of the informal resolution.  Corrections asserted that, as Medical Director, Burkett's response "would have been the final step in the [health care] grievance process."  R. at 50.  As this particular response had not been attached to Reed's Petition, Corrections alleged, Reed had not substantiated that exhaustion of his available administrative remedies had occurred.  And as KRS 454.415 *required* a court to dismiss any petition that failed to demonstrate exhaustion of administrative remedies, Corrections argued, Reed's deficiency deprived the court of jurisdiction to review his Petition.

Reed filed a Response where he argued his administrative remedies had, in fact, been exhausted.  Furthermore, Reed alleged, he *had* attached Burkett's response to his Petition.  Nevertheless, he argued, "even if [he] had mistakenly not placed the response from [Burkett] within the pleading," he should "be excused from the mistake as [he] is a *Pro Se* Litigant with limited and inadequate access to Legal Services."  R. at 61.

Following submission of the motion, in an order ("the Order"), R., p. 70, dated July 17, 2024, the circuit court dismissed Reed's Petition. In the Order, the circuit court determined the dispositive question before it to be whether Reed had "properly demonstrated exhaustion of the administrative remedies pursuant to KRS 454.415." Order, p. 2. The Order recognized Reed had attached *some* documentation regarding Grievance 23-297 but concurred with Corrections that "the alleged portions of the grievance that were responses from Dawn Patterson and Denise Burkett, which would have been the final step in the grievance process[,]" were absent. Order, p. 3. As a result, the circuit court concluded, it could not be determined from examination of Reed's Petition whether his administrative remedies had been exhausted.

Citing to *White v. Boards-Bey*, 426 S.W.3d 569, 573 (Ky. 2014), the Order found that the requirement to exhaust remedies was a "jurisdictional issue" and failure to comply deprived the court of jurisdiction for substantive review of Reed's Petition. Order, p. 4.

This appeal follows.

**Standard of Review**

We review the lower court's determination that it lacked jurisdiction over the case due to failure to exhaust administrative remedies *de novo*, meaning without deference. "The question of jurisdiction is ordinarily one of law, meaning

-9-

that the standard of review to be applied is *de novo.*" *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007). Our review of dismissals under CR 12.02(f) is likewise *de novo*. *Shaw v. Handy*, 588 S.W.3d 459, 461 (Ky. App. 2019). Accordingly, we proceed in our review "without deference to the interpretation afforded by the circuit court." *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998).

## ANALYSIS

On appeal, Reed emphasizes his *pro se* status and lack of legal training; he requests we construe his pleadings and arguments leniently. Reed's arguments on appeal are indeed difficult to discern. Furthermore, most of his arguments focus on the substance of the underlying claims in his Petition and are largely irrelevant to this Court's review of a dismissal on the basis of failure to demonstrate exhaustion of administrative remedies. However, Reed does present a discernible argument that the circuit court "abused its discretion" when it granted KDOC's motion to dismiss. He asserts that the Order "simply considers [KDOC's] Motion to Dismiss and not [his] Petition for Declaration of Rights." Appellant brief, p. 9.

While Reed's Petition is often difficult to comprehend, it is clear the claims relate either to a healthcare concern or to inmate grievance procedure. Both

-10-

are "conditions-of-confinement" issues.[4]  Accordingly, before Reed could bring an actionable petition before the circuit court regarding these conditions of his confinement, he was required to exhaust the "administrative remedies as set forth in the policies and procedures of the Department of Corrections[.]"  KRS 454.415(1)(d).  Regardless of whether the remedy Reed ultimately sought was available by way of administrative procedure, pursuant to KRS 454.415(2), he was required to exhaust the available administrative remedies prior to filing a civil action in the circuit court.

Additionally, KRS 454.415(3) required Reed to "attach to any complaint filed documents verifying that administrative remedies have been exhausted."  KRS 454.415(3).  Reed's status as a *pro se* litigant did not provide the circuit court with discretion to overlook a failure to satisfy the threshold obligations of KRS 454.415.  Where the requirements are unmet, a circuit court is *required* to dismiss the action.  KRS 454.415(4); *see also: Thrasher v. Commonwealth*, 386 S.W.3d 132, 134 (Ky. App. 2012) (holding KRS 454.415(4) required dismissal despite *pro se* inmate's request for leniency and documentation of his attempt to exhaust administrative remedies).

---

[4] While Kentucky Courts have not specifically ruled that medical care in prison is a condition-of-confinement, the United States Supreme Court has opined in *dicta* that "the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates."  *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326-27, 115 L. Ed. 2d 271 (1991).

-11-

**Reed's Petition Attached Documentation of the Responses of the Health Care Grievance Committee and the Medical Director**.

The Kentucky Department of Corrections' Policies and Procedures ("CPP") 14.6 governs inmate grievances within the prison system in Kentucky.[5] In CPP 14.6(II)(B), several examples of "aspect[s] of an inmate's life in prison" which may be considered "grievable" issues are identified specifically. A "health care concern" is among the specific examples. CPP 14.6(II)(B)(6).

The three-step process tailored specifically for a "health care grievance" concerning access to or the quality of inmate health care services is set forth in CPP 14.6(II)(K). "The grievant shall include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1." CPP 14.6(II)(K)(1)(a)(4). Following the inmate's submission of a medical grievance, staff must first attempt resolution through informal means. CPP 14.6(II)(K)(1)(b). If the informal resolution is unsatisfactory to the inmate, he may appeal by written request to the grievance coordinator for review by the Health Care Grievance Committee. CPP

---

[5] The CPP sections cited herein have been effectively incorporated by reference into the applicable regulations. *See* 501 Kentucky Administrative Regulation ("KAR") 6:020 § 1. This Court may take judicial notice of the CPP, as it is a public document. *Fox v. Grayson*, 317 S.W.3d 1, 18 n.82 (Ky. 2010). Chapter 14 of the effective version of the CPP is currently available at: https://corrections.ky.gov/About/cpp/Pages/Chapter-14.aspx (last visited Mar. 3, 2026).

-12-

14.6(II)(K)(1)(c). It is undisputed that documentation attached by Reed demonstrated his completion of this initial step in Grievance 23-297.

The second step of the health care grievance process consists of review by the Health Care Grievance Committee. CPP 14.6(II)(K)(2). Following the decision of the Health Care Grievance Committee, where the inmate remains dissatisfied with its recommendation, he may appeal to the Department of Corrections Medical Director's Office for final administrative review of the health care grievance. CPP 14.6(II)(K)(2)(f). To initiate the third and final step in the health care grievance process, the inmate states a basis for the appeal on a provided form. *Id.* Following submission, a final decision as to the health care grievance is issued by the Medical Director. CPP 14.6(II)(K)(3).

The circuit court recognized that "[t]he Kentucky Department of Corrections' Policy and Procedures sets forth the three (3) step process for an inmate to exhaust his administrative remedies for a medical grievance" but concluded that:

> review of the record before the Court shows that [Reed] has not complied with these requirements nor attached proof. The crux of the issue is that Petitioner did not attach the alleged portions of the grievance that were responses from [the Health Care Grievance Committee] and [the Office of the Medical Director] which would have been the final step in the grievance process.

Order, p. 3.

-13-

Upon this Court's review of the record, however, we note among the pages in the Record on Appeal which are identified as Reed's Complaint/Petition [R. at 11-35], a document bearing the heading "Attachment III Healthcare" that appears to be a completed KDOC form containing the responses of both the Health Care Grievance Committee and the Office of the Medical Director Grievance 23-297.[6] R. at 32. Near the top of the document, "Findings and Recommendations" attributed to the Health Care Grievance Committee regarding Reed's appeal of the informal resolution appear. *Id*. These typewritten Findings and Recommendations are attributed to Dawn Patterson and appear to be endorsed with the handwritten initials "DP". *Id*. Consistent with a quotation attributed to Patterson in Reed's Petition, the Findings and Recommendations section indicates:

> The Healthcare Grievance Committee has reviewed your complaint and your medical records. Concur with the informal resolution. This will need to be addressed at the institution where it occurred.

R. at 32.

On the same form, Reed appears to have indicated he was not satisfied with the Healthcare Grievance Committee's recommendations and his "wish to appeal this Recommendation for Administrator Review" is selected. R. at 32. Below this, a section designated for "Administrative Review" and "Review and

---

[6] It is noteworthy that, upon our review of the Record on Appeal, page 32 looks to be the product of a very poor photocopy and contains such faint print that it was nearly mistaken for a blank page.

-14-

Decision" contains a handwritten paragraph that is consistent with the quotation attributed to Burkett in Reed's Petition. *Id*. The handwritten paragraph reads:

> Concur with the Health Care Grievance Committee. Appears the refusal was signed on 12/21/2022. On 12/22/2022 the Medical Provider ordered routine intake lab and apparently wasn't aware of the refusal. When the lab was drawn, 1/10/23, I don't think V. Mandic was aware of the refusal either. I apologize for this error. I will have HSA McDonald to educate staff to make sure a consent or refusal is looked for before drawing such labs.

R. at 32. In a signature space designated for a "Medical Director" that follows, a legible signature of "Denise Burkett APRN" appears. *Id*.

Upon our review of the record, we locate no indication by any party which called the circuit court's attention to what would be designated as page 32 of the Record on Appeal. Nonetheless, the Order indicates that the circuit court "reviewed the record before it" in reaching the conclusion that "it is clear [Reed] has failed to exhaust his administrative remedies and attach such proof." Order, p. 3. There is, however, no indication that page 32 of the Record on Appeal was taken into consideration when reaching that conclusion.

The Order dismissing Reed's Petition states unambiguously that the circuit court determined that "[t]he crux of the issue" before it was KDOC's allegation that Reed had failed to "attach the alleged portions of the grievance that were responses from Dawn Patterson and Denise Burkett[.]" Order, p. 3. Ostensibly, however, page 32 of the Record on Appeal confirms that Reed *did*

attach documentation of the portions of Grievance 23-297 that the Order specifically identified as being absent.

Consequently, we agree with Reed's argument that the circuit court erred by dismissing without full consideration of the entirety of his Petition. Reed's documents instead demonstrate he took administrative action through the three-step health care grievance process delineated in CPP 14.5.

**Reed Failed To Exhaust All Available Administrative Remedies**.

This, however, does not end our inquiry. It is well-established that, as an appellate court, we may affirm the lower court's decision for any reason supported by the record. *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 576 (Ky. 2009). Corrections argues on appeal that "in addition to demonstrating exhaustion in a general sense, attaching documentation is also necessary to demonstrate that the arguments raised in the administrative process are identical to those raised in the action before a court." Appellee brief, p. 5. In support, Corrections cites to *Houston v. Fletcher*, 193 S.W.3d 276, 278 (Ky. App. 2006).

In a related argument to the circuit court, Corrections pointed out that the only issue raised by Reed in Grievance 23-297 "was that his lab work included HIV testing that he had refused." R. at 50. Corrections argued this subject matter had nothing to do with the claims in Reed's Petition that turned upon allegations that the grievance process itself had been met with interference. Accordingly,

-16-

Corrections contended that Reed had failed to demonstrate exhaustion of administrative remedies because he "did not attach documentation demonstrating that he grieved the other issues he now wants to raise for the first time here: that he was 'hindered' in pursuing his grievance." R. at 52.

To the extent Corrections asserts that *Houston* holds that courts may only review issues previously raised on administrative appeal, we agree. 193 S.W.3d at 278. Where an inmate fails to present an issue for review in administrative proceedings, the inmate may not subsequently present that issue to a court reviewing the administrative decision. "The failure to raise an issue before an administrative body precludes a litigant from asserting that issue in an action for judicial review of the agency's action." *O'Dea v. Clark*, 883 S.W.2d 888, 892 (Ky. App. 1994).

Furthermore, the proper procedure for Reed to have presented his complaints about the grievance process itself was not through the medical grievance process. As with inmate health concerns, pursuant to CPP 14.6(II)(B)(2), complaints regarding "corrections policies and procedures" are "grievable" issues. Additionally, complaints an inmate has regarding "personal action by staff" are "grievable" pursuant to CPP 14.6(II)(B)(4). However, the grievance process for these issues is delineated in CPP 14.6(II)(J), rather than the grievance process in CPP 14.6(II)(K) that Reed pursued. Reed attached no

documentation reflecting that he followed the grievance process in CPP 14.6(II)(J) for his complaints regarding the handling of his healthcare grievance. Consequently, we agree with Corrections that Reed's Petition did not demonstrate that he had exhausted his administrative remedies for the claims in the Petition that related to his allegations regarding the grievance procedure.

However, this argument does not alone establish the deprivation of jurisdiction for court review of the healthcare claims in Reed's Petition. Reed seeks compensatory and punitive damages for these claims. He asserts he was "denied state, federal, and United States Constitutional rights due to the respondents [sic] negligent breach of duty, Petitioner has suffered irreparable harm as a result of their Medical Negligence." R. at 16.

Although neither party raises the issue, the Court has recognized in nonbinding opinions that such claims require exhaustion of the administrative relief available in CPP 14.5.[7] The current version of that section provides that an inmate who:

> believes that he has suffered a loss or injury to his person or property because of negligence on the part of the Department of Corrections or its employee or agent, the individual may file a claim with the Board of Claims.

---

[7] *Radford v. Lane*, No. 2024-CA-0715-MR, 2025 WL 1717017, at *2–3 (Ky. App. Jun. 20, 2025) (unpublished); *Harrison v. Gibson*, No. 2019-CA-0955-MR, 2021 WL 1235736, at *4 (Ky. App. Apr. 2, 2021) (unpublished); *Harris v. Zirklebach*, No. 2019-CA-1293-MR, 2021 WL 298786, *2 (Ky. App. Jan. 29, 2021) (unpublished).

CPP 14.5(II)(A)(1).[8]

CPP 14.5(I) provides that "Board of Claims" refers to "the entity established in KRS 49.010(2) that has the authority to address negligence claims against the Commonwealth and its agencies pursuant to KRS 49.020(5)."

Depending upon the value of the claim, the Board of Claims proceeds with review of a complaint differently. KRS 49.090(2), (3). Where the original claim was for $2,500 or more and the claimant is dissatisfied with a decision of the Board of Claims, a proceeding in circuit court may be initiated for review of the decision. KRS 49.150(2). A claimant's pursuit of further review by appeal to this Court is governed by KRS 49.160.

We discern CPP 14.5 to have been applicable and available to Reed for administrative redress of the claims the Petition asserts against Corrections.[9] Pursuant to KRS 454.415(1)(d), Reed was required to exhaust this administrative

---

[8] At the time of the events described in Reed's Petition, CPP 14.5(II)(A)(1) provided that an inmate who "believes that he has suffered a loss or injury to his person or property as a result of negligence on the part of Corrections or its employee or agent . . . may file a claim with *the Claims Commission*." Also at that time, CPP 14.5(I) identified the "Claims Commission" as "the entity established in KRS 49.010 that has the authority to address negligence claims against the Commonwealth and its agencies pursuant to KRS 49.020(1)." However, by that time, the entity established in KRS 49.010 with the authority to address negligence claims against the Commonwealth and its agencies pursuant to KRS 49.020(1) was the Board of Claims. *See* KRS 49.020(5); *Radford*, 2025 WL 1717017, at *2–3.

[9] The process of an inmate proceeding before the Board of Claims in pursuit of compensation for the loss of property as the result of alleged negligence is discussed in *Tramber v. Commonwealth*, No. 2017-CA-000437-MR, 2018 WL 1565676, at *2 (Ky. App. Mar. 30, 2018) (unpublished).

remedy. However, nowhere in the Petition does Reed allege that he presented any claim to the Board of Claims. Despite our determination Reed attached documentation of an exhaustion of the health care grievance process delineated in CPP 14.6, nowhere is there any indication that Reed pursued the administrative process for claims of damages pursuant to CPP 14.5. Consequently, his failure to demonstrate exhaustion of this available administrative remedy provides adequate basis for this Court to affirm dismissal of Reed's Petition for failure to exhaust administrative remedies as to those claims.

## CONCLUSION

Reed's failure to exhaust his administrative remedies, and failure to file his complaint with supportive documentation per KRS 454.415(3), forms a sufficient basis for affirming the Franklin Circuit Court's order dismissing Reed's Petition. Considering the foregoing, we AFFIRM the Franklin Circuit Court's order dismissing Reed's Petition.

ALL CONCUR.

BRIEF FOR APPELLANT:

Taynandree Reed, *pro se*
Wheelwright, Kentucky

BRIEF FOR APPELLEES
DEPARTMENT OF
CORRECTIONS, COOKIE CREWS,
IN HER OFFICIAL CAPACITY AS
COMMISSIONER OF THE
KENTUCKY DEPARTMENT OF
CORRECTIONS, AND DENISE
BURKETT, APRN:

Richard D. Lilly
Frankfort, Kentucky